STATE of Missouri, Plaintiff-Respondent,

v.

Lillian MICELI, Defendant-Appellant.

No. 37247.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Feb. 15, 1977.

Motion for Rehearing or Transfer
Denied March 15, 1977.

Application to Transfer Denied
May 10, 1977.

Daniel V. O'Brien, St. Louis, for defendant-appellant.

Preston Dean, David L. Baylard, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Thomas E. Dittmeier, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

STEWART, Judge.

Defendant, Lillian Miceli, was tried on the charge of Murder in the First Degree, Section 559.010 V.A.M.S., arising out of the death of her husband, Anthony Miceli. She was convicted of the offense of Manslaughter, Section 559.070 V.A.M.S., and sentenced to serve ten years in the Missouri Department of Corrections. We affirm.

Defendant contends that the trial court erred in (1) overruling defendant's motion for judgment of acquittal in that the evidence failed to make a submissible case for the jury; (2) overruling defendant's motion for mistrial made when the prosecutor in his closing argument commented upon defendant's failure to make an exculpatory statement[1] to the police officers; and (3) refusing defendant's tendered Instruction A on self defense and in giving Instruction No. 10, MAI-CR 2.40 by the court.

In determining whether this case should have been submitted to the jury, we view the evidence in the light most favorable to the verdict. We accept as true "all evidence in the record tending to prove the defendant's guilt, whether such evidence is circumstantial or direct in nature, together with all favorable inferences that can reasonably be drawn therefrom and disregard all contrary evidence and inferences." *State v. Chase*, 444 S.W.2d 398, 401 (Mo. banc 1969).

With this principal in mind we necessarily undertake a comprehensive review of the facts. Mr. Anthony Miceli died in the early evening of June 30, 1973, at Normandy Osteopathic Hospital where he had been taken from the vicinity of his home. An autopsy revealed that Mr. Miceli had suffered two scalp wounds to the back of the head, one on the right and one on the left side. The injury on the right side was a depressed skull fracture about an inch behind and three inches above the ear. The injury to the left side was an irregular jagged wound similar to the wound on the right. There was also a fracture on the left side of the head forward of the middle of the ear "above the bone that forms the root of the left eye." There were six stab wounds to the chest and one to the "left shoulder in the back." The transcript does not reveal the location of all of the stab wounds.[1] One of the wounds was described as "on the right side of the breast plate." This was where a cut extended through the

right pulmonary vein and artery, severing them and extended through the diaphram and into the liver. The cause of death was internal hemorrhaging, loss of blood and shock, caused by the last described stab wound.

Defendant and her husband had been separated. His car was seen in the driveway of their home at 8522 Roanoke Drive in Bel Nor on Saturday, June 30, 1973, from about 2:00 p. m. on. Mr. Miceli was seen at about 4:30 p. m. as he came down the steps of the Dischinger home which is one door east of the Miceli home. There was a trail of blood leading from the Miceli home to the Dischinger home. Mr. Miceli was bleeding from the nose and ears, he had lacerations of the chest and was covered with blood. As he left the Dischinger home he staggered eastwardly down the street. One of his neighbors tried to walk him to a car. He collapsed on the lawn at 8467 Roanoke Drive. Mr. Sowash, another neighbor, came up in a car and Mr. Miceli was assisted into the car and taken to the hospital. The only sounds he made on the trip to the hospital were unintelligible moans.

After Mr. Miceli left the Dischinger home a Mrs. Spillman rang the doorbell at that house. Mr. Dischinger came out and went to the rear of his house. He saw Mrs. Miceli on the patio in her back yard standing over a trash can as though she had just put something in it. She was a short distance from her back door. She was wearing a nightgown. She had blood on her shoulder, arm and left leg. Mr. Dischinger asked if he could help and she said, "Stay away." He then went toward the front of the house. Mrs. Dischinger's dog started barking and she went to the rear yard. When she got there she heard Mrs. Miceli's back door slam and she saw flames coming from the trash can in the Miceli yard.

At about this time Officer Tomlinson arrived. He went to the back door of the Miceli home, knocked on the door and identified himself as a police officer. A female

---

1. "One was on each side of the breastplate between the fifth and sixth rib, one here, one here and one approximately here."

voice called out, "Stay away." The officer went to the front door which was unlocked and let himself in. He saw Mrs. Miceli standing in the kitchen with a six inch knife pointed at her abdomen. At the request of the police officer she surrendered the knife.

Mrs. Miceli was dressed in a nightgown. She was bleeding about the scalp and the abdominal area. When the officer asked where her husband was she showed him a telephone number and said, "Call my son."

There was a pool of blood on the kitchen floor with a towel and various rags in and around it. There was also a pen lying upon the rags. There was a glass top table in the kitchen which had blood on it. On this table there were a pair of glasses, a large check book, various business papers, a pencil and a "business portfolio." There was also a note in Mrs. Miceli's handwriting on the table. It read, "I love my family and friends. Forgive me."

There was blood leading from the kitchen down the hall to the front door. There were some drops of blood leading from the back door to and on the patio up to the trash can. There was no blood in other rooms in the two-story house.

A claw hammer with blood on it was found on a window sill just outside the rear door of the Miceli home. A blow from this hammer from above and behind Mr. Miceli would be consistent with the injuries found to Mr. Miceli's head.

The defendant did not testify. Her evidence consisted of her hospital record and the testimony of Mr. Sowash. The hospital record revealed that she had multiple stab wounds about the abdomen. One of the wounds lacerated the spleen requiring its removal. "There are noted to be seven or eight small punctate wounds of the right temple 2-5 mm. in length and on investigation are felt to be quite superficial in nature." Although the discharge note states that Mrs. Miceli suffered a mild concussion, no mention is made of a concussion in the admission notes.

Mr. Sowash testified that while driving Mr. Miceli to the hospital he asked what happened and Mr. Miceli said that, "He just got hurt, he just injured himself or something to that effect."

There were no eyewitnesses to the assault which resulted in the death of Mr. Miceli. In a case which is based upon circumstantial evidence "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo.1963). However, "the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[;] . . the mere existence of other possible hypothesis is not enough to remove the case from the jury." *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970).

The evidence here presents one of the strongest cases dependent upon circumstantial evidence. The jury could readily find that Mr. Miceli was intentionally killed under circumstances which could not be deemed suicidal or accidental. They could find that Mr. Miceli was initially struck from behind while seated at the kitchen table by the hammer which was found on the window sill outside the house. Defendant was known to have been outside in the immediate area where the hammer was found. Defendant was found with a knife in her possession which could have caused the stab wounds, to her husband, and self inflicted upon herself. The note in defendant's handwriting asking forgiveness reveals a consciousness of guilt. It indicates that she had done something which required forgiveness. Defendant was the only person found in the house from which the victim departed. Each case of circumstantial evidence must be considered in the light of its own peculiar facts. We consider the present case to present stronger circumstances than those in *State v. Maxie*, 513 S.W.2d 338 (Mo.1974), where the only circumstance connecting defendant to the crime was his fingerprint on a box in the victim's apartment. See also the most

recent case of *State v. Franco*, 544 S.W.2d 533, Mo., 1976.

■ Defendant's principal complaint is that there is no showing of motive. Motive is not a necessary element of the crime. *State v. Logan*, 344 Mo. 351, 126 S.W.2d 256, 261[14, 15] (1939). There is evidence, however, that the defendant and the victim were estranged; a fact from which the jury could believe that there was a motive for defendant's action. The note in defendant's handwriting would also indicate that defendant felt she had a motive to kill her husband. We have reviewed *State v. Odum*, 351 S.W.2d 10 (Mo.1961) and *State v. Baker*, 453 S.W.2d 918 (Mo.1970), and the other cases cited by defendant but do not find them controlling here.

In *Odum* defendant was accused of murder by arson. There was no proof that the fire was incendiary in origin and no proof that defendant was in the vicinity of the building before or after the fire. In *Baker* the charge was manslaughter by reason of producing abortion by administering a drug. There was a complete lack of evidence to show that defendant had used a drug to produce abortion. The autopsy failed to reveal that there was any drug present in the deceased body and there was no direct evidence that any drug was administered.

■ We conclude that there was sufficient substantial evidence to submit this case to the jury.

Defendant next contends, "The court erred in overruling appellant's motion for mistrial made when the prosecutor in his closing argument, unfavorably commented upon appellant's failure to make an exculpatory statement to police officers thereby violating appellant's right against self-incrimination as provided in Art. I, Section 19 Constitution of Missouri and the Fifth Amendment of the United States Constitution."

The portion of the State's argument to which defendant addresses his complaint is:

"There were only two people in the house. One is dead, and you have to go by the evidence in the kitchen and on the outside and on the actions of the parties. Never once did she tell the police officer she acted in self-defense and her husband attacked her."

■ Defendant's objection was, "Judge, at this time I'm going to object to comments made by the attorney for the State . . . 'never once did she say to the police . . .' I ask for a mistrial." This objection was insufficient to preserve the point. The defendant did not call the attention of the court to the ground or reason for the objection. *State v. Lang*, 515 S.W.2d 507, 511[5–10] (Mo.1974).

■ Defendant did not seek to preserve this issue in her motion for new trial. She now asks that we consider the issue under Rule 27.20(c). Because the judgment in this case was based upon circumstantial evidence and because error of the type alleged could tip the scales; we shall consider the issue to determine whether there was error affecting substantial rights of the defendant.

The defendant relies primarily upon *State v. Butler*, 512 S.W.2d 466 (Mo.App. 1974). In that case defendant fled the jurisdiction. On trial he testified that he fled because there were persons with guns trying to shoot him. He had not told the police that he fled for this reason when they arrested him. The essence of the ruling in *Butler* is, ". . . that the prosecuting attorney is not entitled to refer to an accused's failure or refusal to make any statement to the police while an arrest is being made or after arrest." This is the rule in all of the cases relied upon by defendant.[2]

This is not the rule, however, when the reference is made to the silence of an accused when that person is not being arrested or is not under arrest. In *State v. Rush*, 286 S.W.2d 767 (Mo.1956) it is said l.c. 771:

**2.** *State v. Stuart*, 456 S.W.2d 19 (Mo. banc 1970); *State v. Vainikos*, 366 S.W.2d 423 (Mo. banc 1963); *State v. Phelps*, 384 S.W.2d 616 (Mo.1964).

"The rule in this state is that silence of an accused when not under arrest, and in circumstances such that only a guilty person would have remained silent, may be shown, although after arrest or while in custody the evidence is inadmissible because the accused is under no duty to speak. *State v. Battles,* 357 Mo. 1223, 212 S.W.2d 753, 757; *State v. Lovell,* 235 Mo. 343, 353, 138 S.W. 523."

See also *State v. Butler,* 512 S.W.2d 466, 468[1] (Mo.App.1974).

 In this case the officer referred to in the argument, Officer Tomlinson, was dispatched to defendant's home for "a lady bleeding profusely." He was not dispatched to an assault upon Mr. Miceli. Upon arrival he saw Mrs. Miceli bleeding. She had a knife directed toward her abdomen. After obtaining the knife he then sought to determine the whereabouts of her husband. Her only reply was, "Call my son." The officer called for an ambulance and then made an unsuccessful attempt to reach her son. He saw that she was safely dispatched in the ambulance. Neither Officer Tomlinson nor any other officer went with her. She was not placed under arrest at any time while she was in the presence of Officer Tomlinson. No other officer appeared at the home until after she had been taken to the hospital. She was not under arrest therefore the rule in *State v. Rush* would apply. We rule this issue against defendant.

Defendant's final Point Relied On reads:

"The court erred in refusing appellant's Instruction A and in submitting its own Instruction No. 10 instead, in that said Instruction No. 10 did not reflect the law of the case and was therefore prejudicially erroneous on the issue of justifiable homicide."

 The State argues that this point presents nothing for our review. We agree.

Defendant in her motion for a new trial makes the following references to Instruction A which was refused, and to Instruction 10 which was given:

"9. The Court erred in refusing to give defendant's Instruction A.

10. The Court erred in its Instruction No. 10 in that the issue of justifiable homicide was improperly stated."

These assertions fail to meet the standard of "detail and particularity" required under Rule 27.20(a). *State v. Smith,* 451 S.W.2d 87, 90[2] (Mo.1970).

We also take note of the fact that defendant's point violates Rule 84.04(d) because it does not tell us wherein and why Instruction A should have been given or wherein and why Instruction 10 was erroneous. *State v. Flynn,* 541 S.W.2d 344, 349[12–13] (Mo.App.1976). Appellant has also failed to set forth in full, in the argument portion of the brief, the instructions sought to be reviewed. This is a violation of Rule 84.04(e). *State v. Larkins,* 518 S.W.2d 131, 135[3] (Mo.App.1974). No issue respecting Instructions A and 10 are before us for review.

We find no error. The judgment of the trial court is affirmed.

McMILLIAN, P. J., and RENDLEN, J., concur.