**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Searl DUNN, Defendant-Appellant.**

**No. 40363.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 24, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 24, 1981.

Application to Transfer Denied
June 8, 1981.

Robert C. Babione, Public Defender, Blair Drazic, Michael David, Asst. Public Defenders, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Peter Sadowski, Mary Pincus, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., Marion Eisen, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

STEWART, Judge.

This case comes to the writer on a recent reassignment. Searl L. Dunn, defendant, was convicted of the crime of murder in the second degree as a result of the death of his mistress' two year old child. He was sentenced by the court under The Second Offender Act to a term of 150 years in the custody of the Missouri Department of Corrections.

For reversal defendant claims that (1) the evidence was not sufficient to sustain the conviction; (2) he was deprived of a fair trial because of prosecutorial misconduct; (3) he was improperly cross-examined with respect to the last time he had seen his own children; (4) it was error to admit into evidence photographs that were unduly inflammatory and prejudicial; and (5) the punishment was in excess of that permitted by law. We affirm.

We consider first defendant's contention that the court erred in denying his motion for judgment of acquittal because there was no substantial evidence to warrant a finding that the victim died as a result of injuries inflicted by defendant.

This issue requires an extensive review of the facts. In stating the facts we review the evidence in the light most favorable to the State accepting as true all of the evidence, circumstantial and direct, tending to prove defendant's guilt, together with all favorable inferences that can reasonably be drawn from that evidence and disregard all evidence and inferences to the contrary. *State v. Miceli*, 549 S.W.2d 113 (Mo.App. 1977).

In May of 1977 Patricia Bruegge, age 18 years, left her husband. On May 31 she met defendant who was 32 years of age. On June 1, 1977, Mrs. Bruegge and her sons, John A., age two years, and Christopher, about six months, moved into his apartment with him.

On June 25, 1977, at about 7:15 PM, a police officer was directed to defendant's apartment. Mrs. Bruegge and defendant were in the apartment. Mrs. Bruegge directed the officer to a bedroom where he found John Bruegge lying unconscious on a mattress. The child's head was wet and he had multiple areas of discoloration over his face and body. He was taken to the hospital where he was declared dead upon arrival.

The autopsy revealed visible injuries consisting of contusions of the right and left forehead, and the left jaw, a patterned contusion of the right jaw, contusions of the right eyelid, the left eye, posterior inferior scalp, and of the upper abdomen that extended to the left, contusions of the right lower abdomen, and the right inguinal area, several small contusions of the chest, and of the left scrotal sac, a patterned contusion of the right buttock, on the right buttock slightly superior, slightly upward and to the outer aspect, of the lower part of the right buttock near the leg, small contusion of the left upper back, a patterned contusion of the left upper arm, small contusions of the right hand, and additional contusions of the left arm, and small contusions of the right upper leg.

Some of these injuries showed healing taking place, others had been suffered within hours. There were burn injuries of the buttocks which were consistent with the area being submersed in hot liquid.

Major internal injuries involved the head and the abdomen. John Bruegge suffered a subdural hemorrhage and brain swelling. Examination of the abdomen cavity showed some hemorrhage and contusions of the intestines, and the liver and two lacerations to the small intestines. The cause of death was given as multiple blunt trauma of the head and abdomen. The expert witness also testified that such trauma could have been caused by a person of defendant's description striking the boy. The injuries "were not consistent with accidental injury including fall."

When Mrs. Bruegge moved in with defendant, Johnny had been accustomed to sleeping in the bed with his mother. Defendant beat the boy on a number of occasions to "break" him of sleeping in the bed with his mother and to get him to sleep on the floor. Defendant also undertook the

task of toilet training, and would spank him "pretty hard" with a belt and require Johnny to set on the potty-chair even though the boy did not have to go to the toilet. Defendant would leave him there "until he went." Mrs. Bruegge told defendant not to beat Johnny so hard. Defendant made no response to her request. She did not stop him from hitting Johnny.

Three or four days after Mrs. Bruegge moved in with defendant her cousin Judy observed a bruise on both sides of the child's face. Judy baby-sat with the Bruegge children on a number of occasions and about a week or so later noticed that Johnny's buttocks were red and raw. On one occasion she saw defendant hold Johnny with one hand and hit him hard with the other hand. This was about the third week after defendant and Mrs. Bruegge started living together. This witness also observed defendant strike the boy on one other occasion after that. This was about the fourth week after Memorial Day.

On June 15 a neighbor noticed that Johnny had a black eye and the side of his face was bruised.

On the day before Johnny's death he was seen by a witness at a restaurant with his mother, defendant and Mrs. Bruegge's mother. The witness observed that the child's face was all puffed up and black and blue; his eyes were glazed and "wide like [he] was in shock." The defendant was "poking" a sandwich into the child's mouth but the child's face was so swollen he could not open his mouth. He made no sound. The defendant told the child "[y]ou had better damn well eat it." The witness expressed anger at the treatment of the child and the defendant stopped trying to force the child to eat.

None of the witnesses had ever seen Mrs. Bruegge strike Johnny with the exception that she would slap his hand if he reached for something he was not to have. He showed no signs of injury until after he moved with his mother into defendant's apartment. After that time he did not run and play as he had in the past. He was subdued.

Defendant testified on his own behalf that he never hit Johnny with his fists, never punched him and did not hit him in the head. He did not strike the boy with a belt. The only discipline inflicted by him was to ask the boy to stand in the corner or deprive him of his toys.

Defendant testified that the first injury that he noticed was the burns to the buttocks. This was brought to his attention by Mrs. Bruegge who told him that she was giving Johnny a bath and went to see about the baby and Johnny turned on the hot water and sat down in it. A week before the child died he noticed other injuries. He was not present when Johnny was hurt. Mrs. Bruegge told him that Johnny had fallen down the steps and had a few scratches on his face and stomach, a slight cut on the eye and a little mark on the back of his head; he did not appear to be seriously hurt. On the day Johnny died defendant spent most of the morning away from the house. Later in the day as he was leaving the house, Mrs. Bruegge told him "Johnny is having a convulsion again" and he went into the room and found him unconscious. Defendant further testified that Johnny had a convulsion "the night before or something." He denied the testimony of all the other witnesses concerning any abuse of the child. Defendant had previously been convicted of the crime of armed robbery, burglary and theft, robbery and theft, and automobile theft.

◼ This case was tried as one of circumstantial evidence. In such cases the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt. They must also be inconsistent with and exclude every reasonable hypotheses of his innocence. The circumstances do not have to be absolutely conclusive of guilt nor do they have to demonstrate the impossibility of innocence. The existence of other possible hypotheses is not sufficient to remove the case from the jury. *State v. Miceli*, 549 S.W.2d 113 (Mo.App. 1977).

■ In this case the jury was warranted in finding from the evidence that defendant caused the death of Johnny Bruegge. Prior to the time that Johnny moved into defendant's apartment with his mother there was no evidence of his having been abused. His mother was not shown to have been a strict disciplinarian and was not known to have hit him. The jury could find that defendant beat the child to force him from sleeping in the bed with his mother; to toilet break him; to discipline him for running, for not sitting when commanded. Witnesses saw defendant land severe blows upon the child. Defendant exhibited hostility toward the child just the night before his death. The child's death was caused by multiple blunt traumas which could only have been inflicted by one other than the deceased and not by accident or falls. The court did not err in overruling defendant's motion for acquittal.

We next consider defendant's contentions that this cause be reversed because of prosecutorial misconduct.

The first instance of which defendant complains occurred in the argument of the State when the Assistant Circuit Attorney was arguing with respect to the manner in which Johnny Bruegge received the burns to his buttocks. She argued,

"Who has the hostility? Who is the one who has the hatred? Who's good and pure? Not the baby's mother. She's a slut. She's a tramp. She wouldn't do this to this baby. He does. He's been in the penitentiary since he was fifteen.

MR. DRAZIC: I'll object. She's drawing an improper inference, and she knows that's wrong, and I ask that the jury be instructed to disregard that.

THE COURT: The Jury is instructed to disregard the penitentiary.

MRS. EISEN: He told you on the stand of six different felonies, and he told you the first time was in 1966. He's got the hatred. He's got the hostility.

MR. DRAZIC: I'll object. She's doing the same thing. I ask that she be held in contempt if she keeps it up.

THE COURT: That's overruled.

MRS. EISEN: He does have the hatred, and he does have the hostility. Look at him. No remorse, no regrets."

■ It is well settled that it is improper to argue the existence of prior unconnected crimes as a basis for a conviction in the case that is being tried. *State v. Phelps*, 478 S.W.2d 304, 307 (Mo.1972). In this case the court sustained the objection. Its admonition to disregard "penitentiary" can only be understood as telling the jury to disregard any reference to convictions in the context of the argument. It granted defendant the relief requested. *State v. Crider*, 419 S.W.2d 13, 15 (Mo.1967). After the next statement in argument defendant made a general objection and asked that counsel be held in contempt as additional relief for counsel's argument. The court's response was "[t]hat's overruled." Considering the fact that the court reviewed the matter in ruling the motion for new trial and our reading of the transcript it is apparent that the court was overruling defendant's request that counsel be cited for contempt, and not the general objection which preserved nothing for our review. *State v. Henderson*, 510 S.W.2d 813, 823 (Mo.App.1974). The court had just sustained an objection and we believe that the jury understood the court's ruling. It is also apparent that defendant understood the ruling because he did not ask for clarification of the ruling which may have been a tactical move by able counsel to put the prosecution in a bad light in the eyes of the jury. The trial court took prompt corrective action in the first instance and did not condone the inept actions of Mrs. Eisen that followed the first objection. We cannot say that the court abused its discretion in refusing to hold the prosecutor in contempt. There was sufficient basis in evidence for the prosecution to argue that defendant was hostile and displayed hatred toward the child and no objection was made to such inferences. We find no reversible error in this portion of the argument.

Defendant alleges that the State improperly argued that defendant failed to call any character witnesses. He directs our

attention to the following portion of the argument:

"MRS. EISEN: Where are his witnesses to back up his story? He's the only witness. Where are his friends? Where are the neighbors? Where are the people that saw Patricia Bruegge beat her child for two years? Where are the other girl friends and children to tell you what Searl Dunn is really like?

MR. DRAZIC: I'll object, Your Honor. The Defendant has no burden to put on any evidence.

THE COURT: Sustained. The Jury is instructed to disregard that last comment."

█ Whether the last sentence above was an attempt to put defendant's character in issue when defendant had not made it an issue is of no avail to defendant here. The trial court sustained defendant's objection and ordered the jury to disregard the statement of counsel. Whether it was for the reason given at the time the objection was made or for the reason now assigned, the result is the same. Defendant asked for no specific remedy; the court instructed the jury to disregard the comment. Error, if any, was cured by the action of the court. *State v. Sanders*, 577 S.W.2d 186 (Mo.App. 1979).

The next incident that defendant urges for reversal occurred in voir dire. The background for defendant's complaint lies in the fact that Patricia Bruegge had originally been charged as a co-defendant in the commission of the crime. About a month before the trial in this case the State promised Mrs. Bruegge that it would reduce the charge and upon a plea of guilty would recommend a jail sentence commensurate with the time she had been incarcerated. Mrs. Bruegge agreed to testify on behalf of the State.

During voir dire the Assistant Circuit Attorney attempted to prepare the jury for Mrs. Bruegge's appearance as a witness for the State and to determine whether her credibility would be unduly effected by reason of the circumstances surrounding her plea of guilty. The thrust of one of the questions, which was not completed, was that the Assistant Circuit Attorney had made an agreement with Mrs. Bruegge to reduce a charge of Murder in the Second Degree to Child Mistreatment, and a recommendation of a sentence of seven months, the time Mrs. Bruegge had already spent in jail, in return for Mrs. Bruegge's "*truthful—.*" Defendant objected "[t]o 'truthful.'" He then stated, "I ask that the Jury be instructed to disregard the move for a mistrial." The objection was sustained, the jury was ordered to disregard the statement and the attorney for the State was admonished.

The voir dire then resumed with the following comments by the prosecutor:

"As Prosecutor, I recommend certain time, a certain sentence if she would testify in this case, and, as such, I did this. I didn't want to do this. It's something I had to do.

MR. DRAZIC: Objection. She didn't want to do it. Same objection and move for a mistrial."

Defendant's objection was sustained and the jury was ordered to disregard the statement. The court did not rule upon defendant's motions for mistrial at the time of these two incidents but denied the motions after the State had completed its voir dire.

The basis of the defendant's contention of error is that the comments constituted unsworn testimony on the part of the prosecutor and deprived him of the right to cross-examine. Defendant did not object on the ground that the comments would reveal that a person jointly charged had entered a plea of guilty to a charge growing out of the same incident. Nor did he make any objection when Mrs. Bruegge testified that she had pled guilty to mistreatment of the child.

█ The purpose of the voir dire is to ferret out biases and prejudices of potential jurors that would prevent them from arriving at a verdict on the basis of the evidence and the law. See *State v. Roseman*, 583 S.W.2d 232 (Mo.App.1979). The voir dire of the State on this subject did develop prejudice on the part of one of the veniremen.

Defendant in this case was not objecting to the revelation of the fact that Patricia Bruegge had agreed to testify on behalf of the State upon the assurance that she could plead guilty to a lesser offense with the assurance that the State would and did recommend that her sentence be commensurate with the time she had already been confined. His objection went to the form of the voir dire, not to the substance. It is apparent that it was defendant's trial strategy to use this fact to attack the credibility of Mrs. Bruegge. This his counsel did skillfully in cross-examination and in argument.

This portion of the voir dire on the part of the State was not well thought out nor artfully prepared and it was improper. The trial court however promptly sustained the objections and advised the jury to disregard the statements of counsel for the State. After the State had completed its voir dire and at a time when the court could reflect upon the effect of the comments of the State it overruled the motions for a mistrial. As has been repeatedly stated, a mistrial is a drastic remedy for trial error and its use rests in the discretion of the trial court. The appellate court will not reverse except for abuse of that discretion. The trial court took corrective action in this instance which in its opinion overcame the transgressions of counsel for the State. We find no abuse of discretion. *State v. Raspberry*, 452 S.W.2d 169, 173 (Mo.1970).

Defendant next urges that we reverse and grant him a new trial because of the vituperative argument of the Assistant Circuit Attorney in which she referred to defendant many times as a "demon," a "devil," and as a "monstrous force." Defendant candidly points out that no objections were made to the above characterization of defendant during the argument but asks for reversal on the basis of plain error resulting in manifest injustice. Rule 29.12(b). He also asks us to consider this a portion of the prosecutor's continued course of misconduct.

The appellate courts have consistently condemned the use by prosecutors of unbecoming names and epithets to characterize the defendant. Very few cases have reversed on this ground particularly when there is some evidentiary basis to support such characterizations. See *State v. Poole*, 556 S.W.2d 493 (Mo.App.1977) and the cases cited therein. In consideration of cases such as *Poole* and the fact that the trial court was not given the opportunity to rule on these matters during this trial, we cannot say that the argument in this regard constitutes plain error within the meaning of Rule 29.12(b).

Defendant contends that the court "erred in permitting the prosecutor to cross-examine [defendant] regarding the last time he had seen his own children," because it "was irrelevant to any issue in the case and was evidence of other crimes."

During cross-examination of defendant he was asked when he had last seen his own children. Defense counsel asked to approach the bench and at a side bar conference said, "I anticipate that Mrs. Eisen wants to ask this man about incidents dealing with alleged beatings of his own children. They are other completely separate occasions. His answer to any question like that would be he did not beat the children, and if she's going to ask it for the sole purpose of asking it—."

Thereafter defendant testified that he had not seen his own children since 1967. He was then asked "[c]an you explain why not?" He answered "[t]hey were awarded to the custody of their mother." Defendant's counsel objected on the ground that "[i]t's totally irrelevant. Its hearsay." After the objection was overruled the State dropped that line of inquiry. The Assistant Circuit Attorney did not elicit the evidence defendant had anticipated and did not frame the question so as to indicate that defendant had abused his own children.

The question of relevancy is a matter largely within the discretion of the trial court and will be disturbed only if a clear abuse of discretion is shown. *State v. Lee*, 556 S.W.2d 25, 32 (Mo.1977). Even if the evidence elicited was irrelevant no de-

monstrable prejudice resulted. *State v. Kerr*, 531 S.W.2d 536, 542[16] (Mo.App. 1976).

Appellant next claims that the trial court erred in refusing to grant a protective order prohibiting the State from putting into evidence Exhibits 1, 2, 3, 5, 6, 7 and 13. Each of these exhibits was a color photograph of the dead child taken at the morgue; Exhibits 1, 2 and 3 frontal views, and 5, 6, 7 and 13 views of the child's buttocks. Appellant claims these photographs should not have been admitted because they were inflammatory and unduly prejudicial to him in the eyes of the jury. He admits that the courts of Missouri have held that photographs, albeit inflammatory, are admissible if they are relevant and otherwise probative in one or more of four areas: (1) if they show the nature and location of the wounds inflicted upon a deceased; (2) they enable the jury to better understand the facts testified to by the State's witnesses; (3) if they corroborate the testimony of the State's witnesses; and (4) if they aid in establishing any element of the State's case. *State v. Love*, 546 S.W.2d 441, 451[10] (Mo.App.1967).

■ These photographs tended to explain the nature of the injuries sustained by the child which resulted in his death, to corroborate the physician's description of external bodily injuries she observed, and her diagnosis. The court did not err in admitting the photographs into evidence.

■ Appellant's argument that admissibility of these photographs was rendered improper because he offered to stipulate what the photos would show so that the injuries sustained by the child were not contested. Appellant, as a matter of fact, stipulated only to the diagrams of the child—Exhibits 12, A, B and C—but that did not affect the admissibility of the photographs where the injuries which resulted in the death of this child could best be shown by color photographs. The cases appellant cites in his brief confirm our holding in this case, and we hold that the trial court did not err in admitting these exhibits.

■ Defendant's final contention is that his sentence of 150 years exceeds the statutory maximum. As conceded by defendant, *State v. Stephens*, 507 S.W.2d 18 (Mo. banc 1974) has ruled the issue adversely to defendant's position. We are bound to follow the last controlling opinion of the Supreme Court of Missouri. Const. of Missouri 1945, Art. V, § 2. *State v. Hegwood*, 558 S.W.2d 378, 381 (Mo.App.1977).

We find no reversible error. The judgment of the trial court is affirmed.

KELLY, P. J., respectfully dissents.

SNYDER, J., concur.

KELLY, Chief Judge, dissenting.

I respectfully dissent because I believe that the tactics employed by the Assistant Circuit Attorney throughout the trial of this criminal proceeding was the product of an intention to procure a conviction at any costs and deprived the appellant of a fair and impartial trial.

I agree with my esteemed colleagues that the evidence is sufficient to support the verdict of the jury; that the trial court did not err in admitting into evidence the color photographs, and that the sentence imposed was not in excess of that allowed by statute. *I cannot agree, however, with the affirmation of the conviction for reasons stated hereinabove.*

The majority admits that the Assistant Circuit Attorney, in a number of these instances acted improperly but holds that the trial court's rulings and instructions to the jury cured them. Because of the number of prosecutorial improprieties involved, I cannot accept this conclusion.

The Assistant Circuit Attorney initiated a course of misconduct in voir dire, continued said course in cross-examination of the appellant and reached a nadir in her summation.

The majority opinion has set out that portion of the voir dire wherein the Assistant Circuit Attorney attempted to advise the jury why she had plea-bargained with Mrs. Bruegge and agreed to a plea to a

reduced charge, i. e. to obtain her truthful testimony. One need cite no authority why this is improper; the trial judge recognized that it was and admonished the Assistant Circuit Attorney that she should not make that statement again. Undaunted by this admonition, she proceeded along the same course, advising the prospective jurors that despite the fact she didn't want to do it, she made a recommendation for a sentence so Mrs. Bruegge would testify. Appellant's objection was again sustained and the jury was instructed to disregard those statements. The majority disposes of appellant's claim of error by analyzing the nature of his objection and by apparently concluding that he waived any error when he failed to object when Mrs. Bruegge testified that she had pled guilty to mistreatment of the child and cross-examined her about these matters to attack her credibility.

The majority does, however, admit that this portion of the state's voir dire "was not well thought out nor artfully prepared and was improper." I recognize that not every improper question asked by a prosecutor calls for a mistrial, and if this was the only instance of impropriety I might agree with the majority. However, viewed in light of the remaining incidents of prosecutorial misconduct by this Assistant Circuit Attorney, I believe it must be examined in the light of the effect that each instance of misconduct, although · miniscule in itself, like the continuing dripping of droplets of water erodes the stone upon which it drops, eroded the defendant's constitutional guarantee of a fair and impartial trial.

The next instance I perceive to be prosecutorial misconduct occurred during cross-examination of the appellant when he was asked when he had last seen his children. Although no objection was made on those grounds, the question went beyond the scope of appellant's direct examination and was in direct violation of § 546.260 V.A. M.S., *State v. Harris*, 564 S.W.2d 561, 574[18] (Mo.App.1978). Every prosecutor is presumed to know this statutory restriction on cross-examination of a defendant. The Assistant Circuit Attorney admitted that the question was a fishing expedition,—"I

can't honestly state to the Court what I would find"—and although she didn't have proof of it, she believed he was ordered by a court in Illinois not to go near his wife or children and she wouldn't be able to prove it until the next day. So far as the record shows no such proof was forthcoming.

As the majority points out, the appellant's reply that he had not seen his children because their custody was awarded to his former wife—their mother—did not adduce any evidence that he was barred from seeing them because he had abused them. However, this question is indicative of the reckless disregard of the statutory rules of evidence she would have employed unless stopped by opposing counsel and supports a finding that the improprieties engaged in were calculated and in derogation of appellant's right to a fair trial. The fact that she dropped the line of inquiry with appellant's answer merely supports a conclusion that she got across to the jury the point she wanted—appellant was unfit to have custody of his children. There had been no evidence as to appellant's married state nor whether he had any children until it was brought out on cross-examination.

The majority concludes that no demonstrable prejudice resulted from the admission of this testimony. If this were the only improper question, I would agree; however, when viewed in light of the others, I cannot adopt that conclusion.

The next three alleged errors occurred during summation—or as more often identified—"argument." The first claim of prejudicial argument is that the Assistant Circuit Attorney engaged in misconduct in arguing appellant's prior convictions and the fact that he had served time in the penitentiary as evidence of his guilt of this crime.

It has been the law in this state, at least since 1963, that when an accused has taken the witness stand to testify in his own behalf and has admitted the nature and the number of his prior convictions, it is reversible error for a prosecutor to refer to those prior convictions in summation to establish a propensity for criminal conduct. The only

legitimate purpose of a prosecutor's argument relative to an accused's prior convictions is on the issue of the accused's credibility, and any argument concerning prior unconnected crimes as reflecting upon the accused's character or as a basis for conviction in the case on trial is improper. *State v. Mobley*, 369 S.W.2d 576, 579–580[1, 2, 3] (Mo.1963). See *State v. Guernsey*, 577 S.W.2d 432, 435[2] (Mo.App.1979) and cases cited therein on this issue.

I need not set out in haec verbae the argument of the Assistant Circuit Attorney; the majority opinion has done that. The majority does not hold that this argument is not error; it holds that the error was cured by the court's instruction to disregard the word "penitentiary," and therefore the appellant obtained all the relief he asked for.

Nevertheless, the Assistant Circuit Attorney merely shifted gears, and used appellant's "six different felonies," admitted to by appellant when he testified, as proof that he committed the crime for which he was on trial. While I must admit appellant's counsel's objection was not the most artful and is correctly categorized by the majority as a "general objection," I believe that in the context it sufficiently advised the trial court that it was on the same grounds as the one the trial court had just sustained. It was: "I'll object. She's doing the same thing ..." In fact, she was.

Unlike the majority, I view the second part of this objection as a request for a contempt citation if, after a second favorable ruling, the Assistant Circuit Attorney continued this line of argument, not as a request for a contempt citation at that point. I believe appellant's counsel had every reason to expect his objection would be sustained in view of the prior ruling of the trial court on the preceding question. Both questions were in violation of the Rule in *State v. Mobley*, supra, and, in my humble opinion, the trial court erred in the latter ruling.

If the majority is correct in construing this objection as a request for a contempt citation alone, then I would say that the Assistant Circuit Attorney should have been cautioned that if she persisted in this line of inquiry she would be cited for contempt because, as Judge Eager recognized in *State v. Mobley*, supra, l.c. 581: "All lawyers and judges know that a jury's knowledge of prior convictions is, in itself, a most damning thing in the trial of a criminal case. When used for legitimate purposes, the defendant must take his chances on this. But prosecutors should not seize upon such an opportunity to further prejudice the defendant by undue repetition and insinuation, or to convey the idea of guilt by reason of the prior offenses." *State v. Scott*, 459 S.W.2d 321, 324[2] (Mo.1970); *State v. Newman*, 568 S.W.2d 276, 281, 282 (Mo.App.1978).

Furthermore, the Attorney General's office has not urged upon us that this point was not preserved for review because the objection was not sufficiently specific to call attention of the trial court to the grounds or reason for the objection, nor that an objection such as "I object" preserves nothing for review. *State v. Lang*, 515 S.W.2d 507, 511 [6, 7] (Mo.1974). While I concede that an objection must generally be specific, I believe there are circumstances where the argument of counsel is so improper and prejudicial that any experienced trial judge should, and as here did with respect to the immediate prior argument in the same vein, recognize the reversible error and, consistent with his prior ruling, sustain it.

I have no difficulty finding the Assistant Circuit Attorney's argument concerning the absence of "the other girl friends and children to tell you what Searl Dunn is really like" was a direct attack upon appellant's failure to call character witnesses and therefore error when he did not put his "general character" in evidence. However, here, for the fourth time, improper conduct by the Assistant Circuit Attorney is excused by the majority because the trial court sustained his objection and instructed the jury to disregard the argument.

Finally we reach the "name-calling" state of the argument, which appellant claims

was prosecutorial misconduct. He complains because the Assistant Circuit Attorney repeatedly referred to him as a "demon."[1] The majority aptly condemned the use of unbecoming names and epithets to characterize the defendant and pointed out that very few cases have been reversed on these grounds alone. This latter admission, in my humble opinion, is a sad reflection on the state of our criminal justice system and an invitation to prosecutors to engage in a practice we condemn. Why counsel would sit by and permit this to occur, I do not know; but, it may have been a tactical decision; or, having been rebuffed so often, he may have finally thrown in the towel. Appellant's only chance for review was by way of Rule 27.20(c) (now Rule 29.12(b)) and my brethren have concluded this argument did not constitute "plain error" as that term is employed in the Rule. I cannot quarrel with them on this point, although I think the time must come when we inform counsel for either the state or the defense that we will no longer tolerate argument of this kind.

I do believe, however, that where, as I opine was done here, a prosecutor, to obtain a conviction, pulls all stops, and engages in one impropriety after another, whereby, in the totality of the circumstances, the defendant's right to a fair and impartial trial was compromised, I cannot let the conviction stand and must vote to reverse and remand for a new trial.[2]

---

1. The record reveals that the Assistant Circuit Attorney referred to appellant as a "demon" three times; a "devil," five times, and "a monstrous force," once. She argued, "This devil is the killer of this little baby." However, the Assistant Circuit Attorney also referred to her star witness, Mrs. Bruegge, as a "slut" and a "tramp." She spared only the judge, her opponent, and the jury.

2. See Alschuler, Courtroom Misconduct by Prosecutors and Trial Judges, 50 Tex.L.R. 629 (1972).