**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Thelma HICKS, Defendant-Appellant.**

No. 14563.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 9, 1987.

William L. Webster, Atty. Gen., Colly Frissell-Durley, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James W. Drese, Lake Ozark, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Thelma Hicks, was charged with, and jury-convicted of, the crime of murder in the second degree, § 565.004, RSMo, Cum.Supp.1984, and thereafter sentenced by the trial court, in accordance with the jury verdict, to 20 years' imprisonment.

The charge was filed following the death of Amanda Hicks, the five year old step-daughter of Thelma Hicks. The evidence at trial, whose sufficiency is not questioned, was sufficient for the jury to find, beyond a reasonable doubt, that Mrs. Hicks, who was alone with the child in the family home, became enraged when the child called her a dirty name, and brutally beat the child with a wooden stake. The child died as a result of a brain hemorrhage caused by multiple blows to the head.

On appeal, Mrs. Hicks' first assignment of error is that state's exhibits A through I, which were photographs, taken during the autopsy, of portions of the child's body, including her skull and brain, were erroneously admitted as evidence because their inflammatory and prejudicial effect greatly outweighed any probative value they may have had.

Exhibits A through G were photographs showing multiple bruises on the child's head, face, neck, back, buttocks, thighs, and chest, while H and I showed damage to the head, face, and brain area.

Dr. Jay Dix, the pathologist who performed the autopsy, testified that, in his opinion, the little girl had received at least five separate blows to the head with a hard object, that the injuries were deliberate and forceful, and that Amanda died "as a result of brain injury to the head."

While Mrs. Hicks' categorization of the photographs, which we have observed, as "inflammatory" is accurate, photographs of five year old children who have been beaten to death usually are. The photographs show the nature and location of the wounds inflicted, helped the jury better understand the witnesses' verbal descriptions of the wounds, corroborated the testimony of the state's witnesses, including the diagnosis as to the cause of death, and aided in establishing elements of the state's case. The photographs were relevant and had probative value. Since this is so, their reception into evidence was proper. The trial court did not abuse its discretion by admitting the photographs into evidence. *State v. Dunn*, 615 S.W.2d 543, 550 (Mo. App.1981).

Mrs. Hicks next asserts the trial court erred "in allowing the testimony of attorney Tom Lorraine concerning State's Exhibit M as information concerning the exhibit belt, which was obtained as a result of his representation of the defendant, and his testimony was violative of the attorney-client privilege."

The point relied on does not say what the testimony was, who had the exhibit, how it was obtained, and why Lorraine violated an

"attorney-client privilege." The point, as written, is violative of Rule 30.06(d), V.A. M.R., and preserves nothing for review.

In her final assignment of error, Mrs. Hicks asserts the trial court erred in admitting into evidence state's exhibit O, which was a wooden stake that the state contended had been used by Mrs. Hicks to beat the child.

Mrs. Hicks' version of events resulting in the child's injuries was that she had whipped Amanda with a belt after Amanda called her a dirty name. She further stated that during the whipping, the child fell backwards, hit her head on a chest of drawers, and became unconscious and, that in the process of carrying Amanda to the family car to take her to the hospital, she dropped the child.

When Mrs. Hicks arrived at the hospital, she related her story to the doctor, who notified the police. Upon being advised as to the cause of the child's death and Mrs. Hicks' version as to how Amanda was injured, Deputy Sheriff John Hill, Miller County Juvenile Officer Tammy Vaughn, and Eldon Police Officer Tom Russell went to the Hicks family home in Brumley, Missouri. Mrs. Hicks was still at the hospital, and Amanda's father, James Hicks, an over-the-road truck driver, was at work. The only person present was James Hicks, Jr., who was 15 years old and resided in the house with his father, stepmother, and Amanda. When asked if the officers could go in the house and look around, the boy replied that he really did not know whether he could give permission to go in the house, "because it wasn't his house." About that time, Bill Roark, Mrs. Hicks' adult son who lived in Jefferson City, arrived. After being apprised of the situation, Roark stated, "he thought it would be all right if we went in and he would give us permission and take any responsibility for what might happen inside the house."

The officers entered the house and found nothing of evidentiary value. Upon exiting from the house, Roark said that he "wondered what she (Amanda) could have hit her head on in the yard to cause her, you

know, to die." The group looked around the yard, and found a wooden stake approximately $2'' \times 2'' \times 23''$ lying on or near some steps leading up to a rear porch of the house. This stake was later introduced into evidence as exhibit "O." Human hair was found on the splintered stick, which matched hair taken from the child's head.

Mrs. Hicks' brief raises a number of issues from this set of facts, such as whether the boy's responses indicated consent, whether the consent of a minor resident legitimizes a warrantless search, or whether Roark's remarks authorized the search. In our opinion, all of these so-called issues are irrelevant.

■ During the examination of the child, after she was brought to the hospital, it became evident that the child had multiple serious head wounds that could only have been inflicted with a blunt instrument. This information was relayed to the law enforcement authorities responsible for the investigation of the cause of Amanda's death. It was their obligation to look for the murder weapon and were doing so when the stake was found. Assuming that, absent consent, a search warrant was required for a search of the fenced yard where the stake was found, the stake would have been found if a search warrant had been obtained. In addition, the police did not act in bad faith to accelerate the discovery of the evidence. A responsible adult, who was the son of the defendant, was present and told the officers to go ahead with the search. Under these circumstances, the warrantless search was proper. *See State v. Byrne,* 595 S.W.2d 301, 304–305 (Mo.App.1979).

■ In light of the suspicious circumstances surrounding the child's death, a search warrant would have been issued, and the discovery of the stake, which the jury reasonably believed to be the murder weapon, was inevitable. Exclusion of vital physical evidence that would inevitably have been discovered perverts the judicial process and inflicts a totally unacceptable burden on the administration of criminal

justice. There was no rational basis for excluding the evidence in question. *State v. Butler,* 676 S.W.2d 809, 812–813 (Mo. banc 1984). The point has no merit.

Judgment affirmed.

CROW C.J., and FLANIGAN, J., concur.