THE STATE v. BOB RICHMOND, Appellant.—12 S. W. (2d) 34.

Division Two, December 18, 1928.

*McCluskey & Hollis* for appellant.

*Stratton Shartel,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for respondent.

666

WALKER, J.—The appellant was charged by information in the Circuit Court of Butler County with murder in the first degree in having shot and killed one Herschel Walker. Upon a trial to a jury he was convicted of murder in the second degree and his punishment assessed at fifteen years' imprisonment in the penitentiary. From this judgment he appeals.

The appellant, the deceased and several others were living at the time of the homicide in house-boats on Black River. On the night of September 27, 1927, several of these persons, including the appellant and the deceased, were playing cards for money in a house-boat belonging to a man named Peoples. Finally all of the players, except the appellant and the deceased, dropped out of the game. The appellant charged the deceased with cheating and grabbed the money on the table. A scuffle ensued and the deceased, who was a much larger and stronger man than the appellant, caught the latter by the head and shoulder and pushed him to the edge of the boat, which had no railing around the deck. Just as the appellant reached the edge of the boat two shots were fired, and the deceased fell backward and expired from the effect of the shots. The appellant fled, saying to someone in his flight that he was in trouble and was going away. He was subsequently arrested in an adjoining county. No weapons were found on the deceased and no witnesses testified to having seen a weapon in the hands of the appellant. Two or three witnesses testified that they saw the flash when one of the shots was fired and the shirt of one of the witnesses who was standing close to

the appellant at the time was set on fire by the flash. The appellant denied that he shot the deceased. He testified that he and the deceased had a little dispute during the game, and that the deceased rose to his feet, hit the appellant and staggered him back towards the door; that he did not shoot the deceased; that the only gun he saw was in the hand of the deceased after they reached the door; that as the deceased drew the weapon appellant struck it and it fired; that deceased drew it again and the appellant again struck and it went into the river.

Appellant complains of the giving of an instruction for murder in the second degree; of improper statements made by the prosecuting attorney; of the short time occupied by the jury in reaching a verdict and that the verdict was improperly reached by drawing numbers.

I. In the motion for a new trial it is contended that the giving of an instruction for murder in the seceond degree was error. The language of the motion, so far as concerns the instruction and the admission or refusal to admit testimony, is as follows:

"Because the court erred in refusing to give the instructions offered by the defendant, number of instructions are marked, REFUSED.

"Because the court erred in admitting incompetent evidence on the part of the State over the objections of the defendant and exceptions.

"Because the court erred in refusing to admit competent and material testimony on the part of the defendant."

Section 4079, Revised Statutes 1919, as amended Laws 1925, page 198, provides, among other things, that "the motion for a new trial shall be in writing and must set forth in detail and with particularity in separate numbered paragraphs the specific grounds or causes therefor." We have found it necessary in many cases since the adoption of that amendment to construe the same. In so doing we have uniformly held that general assignments in a motion for a new trial that the court erred in rejecting competent, relevant and material testimony and in giving improper instructions are insufficient to preserve for our consideration these alleged errors. [State v. Bailey, 8 S. W. (2d) 57; State v. Benson, 8 S. W. (2d) 49; State v. Taylor, 8 S. W. (2d) 29; State v. Gentry, 8 S. W. (2d) 20.]

Ignoring the fact that this motion is insufficient to require us to review the errors complained of, we have nevertheless examined the instructions and the testimony that the appellant may not be deprived of a consideration of whatever merit there may be in his contentions. The evidence was sufficient to authorize an instruction for murder in the second degree. Especially is this true under the pre-

668

sumption which obtains where, as in this case, there was an intentional killing with a deadly weapon. [State v. Eaton, 316 Mo. 1. c. 1003 and cases.] Under such circumstances malice is presumed. [State v. Larkin, 250 Mo. 1. c. 247 and cases; State v. Kyles, 247 Mo. 1. c. 647 and cases; State v. Lane, 64 Mo. 319.]

The sufficiency of the testimony may be more readily determined by a synopsis of the same as follows: The defendant had a difficulty with the deceased over a card game; a scuffle ensued; there were shots from a revolver; the deceased received a mortal wound; the defendant ran away. In view of this record, the following authority applies:

"As a court of errors, it is not, as a rule our duty to pass upon the facts of a case. Where there exists upon the record, what has been rather loosely called any 'substantial evidence' of the existence of a state of facts legally required to be shown, it is our duty to relegate the determination of controverted questions to the triers of fact. 'The rule is, that before this court will relieve on the ground that the verdict is not supported by the evidence, there must be either a total failure of evidence, or it must be so weak that the necessary inference is, that the verdict is the result of passion, prejudice or partiality.' " [State v. Concelia, 250 Mo. 1. c. 424.]

II. It is contended that error was committed in overruling the appellant's objections to statements of the prosecuting attorney in  his opening statement to the jury. The major portion of the appellant's contentions in this behalf are not preserved in such a manner as to entitle them to a review.

The portion of same which has been properly preserved is as follows:

"1. We object to that statement of the prosecuting attorney that he is going to show the defendant had a pistol.

"2. We object to that statement that the defendant conspired with his wife and she made him a pie while he was in jail and put hack saws in it."

As to the first contention, the evidence showed that the appellant was charged with shooting the deceased with a pistol. It cannot be gainsaid, therefore, that it was competent to show that the appellant had a pistol.

As to the second contention: Testimony offered to show that the wife had made a pie for appellant containing hack saws, while he was in jail, was excluded by the court and the jury was instructed to disregard it. Prejudicial error, if any existed, was thereby eliminated.

Another complaint is made as to the prejudicial remarks of the prosecuting attorney in his opening argument that the appellant was a "moonshiner." The testimony disclosed that the appellant had theretofore been convicted upon a charge of selling liquor. We set this forth to demonstrate its lack of merit as prejudicial error. It may be said as dispositive of these and other assignments concerning the remarks of the counsel for the State that they are preserved only in the motion for a new trial.

It is a cardinal rule in appellate procedure, that objections to errors alleged to have been committed during the progress of the trial should be made at the time and exceptions saved to the rulings of the court thereon. Further than this, such exceptions must be preserved in the motion for a new trial (in criminal cases) in the manner and with the particularity required in the amendment of 1925, supra.

In State v. Lloyd, 217 S. W. (Mo.) l. c. 27, we held in regard to this particular ground of error that "it is an invariable rule in this State, announced by this court in numerous well-considered opinions, that when complaint is made of matter of this sort, based, as here, upon the recitals in the motion for a new trial and not otherwise shown, the alleged error is not properly presented and will not be considered. [State v. Schrum, 255 Mo. 273, l. c. 280, 164 S. W. 202; State v. Jeffries, 210 Mo. 302, l. c. 337, 109 S. W. 614, 14 Ann. Cas. 524; State v. Zorn, 202 Mo. 12, l. c. 44, 100 S. W. 591; State v. Doyle, 107 Mo. 36, l. c. 44, 17 S. W. 751.]" [See, also, State v. Ellis, 290 Mo. 219, 230, 234 S. W. 845.]

III. The validity of the verdict is assailed on the ground that the jury gave only one and a half hours time to the consideration of the case before returning a verdict. This contention assumes, on what basis or by what process of reasoning we are unable to determine, that one and a half hours deliberation is not sufficient to enable a jury to render an intelligent verdict. The Legislature in its wisdom has seen fit in defining the powers of a jury to declare that "when the argument is concluded, the jury may either decide in court or retire for deliberation." [Sec. 4027, R. S. 1919.] This statute is but a recognition in other words, of the unlimited authority of the jury to determine for themselves whether a deliberation is necessary to enable them to render a verdict. The time they may devote to such deliberation if the same is deemed necessary, is left wholly to their judgment. Something more must appear therefore to warrant an interference with a verdict than an alleged brevity of their deliberations. To hold otherwise would be to interfere with their consideration of the facts, in which they are as independent of the court as the judge is of the jury in determining the law.

It is further contended that the manner in which the jury, after having found the appellant guilty, determined his punishment, constituted prejudicial error. This contention is sought to be supported by the affidavit of one E. M. Munger, a practicing attorney not connected with the case, who states that after the jury returned their verdict he went into the room where they had been deliberating and found on a table twelve small slips of paper, each having written thereon a figure. The number "10" was written on two of these slips; the number "15" was written on four; the number "20" was written on three; and the number "25" was written on three.

The contention in this regard is presumably intended to charge that the jury, after having regularly reached a conclusion as to the appellant's guilt, determined the extent of his punishment by chance or a compromise verdict. We limit this contention to a presumption because the motion for a new trial contains no affirmative allegation as to the jury's misconduct. It is as follows:

"Eleventh. Because the verdict as shown in exhibit takes on this appearance: That the jury found defendant guilty and in finding the sentence found the largest number who were of the same opinion and then at once came to that number and within their verdict for the purpose of relieving themselves from the custody of Sheriff and jury duty as soon as possible, they having been held together forty hours counting time for trial and deliberation."

It is evident from the language employed in this assignment that the charge is only made by implication. This will not suffice to entitle the matter to a review. No question is raised as to the regularity of the jury's proceedings in finding the appellant guilty. Having so found it is assumed, on account of the unexplained slips of paper alleged to have been found in the room where the jury's deliberations were had, that some sort of arithmetical computation was made to determine the duration of his punishment. To sustain this charge something more tangible than mere presumptions must be submitted in support of the same. In the absence of any evidence to the contrary we are authorized, as we are in regard to the regularity of other judicial proceedings, in presuming, not that the jurors in fixing the appellant's punishment resorted to chance or an arbitrary system of computation, but by an exercise of judgment resulting from a weighing of the evidence. We are not unmindful of the fact that, where the question of a jury's misconduct in relation to the matter here under review has been clearly and affirmatively shown, the court is authorized in setting aside the verdict. We so held in State v. Branstetter, 65 Mo. 149. In that case it was affirmatively charged and clearly shown that the jury, in determining as to their verdict, first agreed that "each should set down on a slip of paper the term for which he thought the defendant should be con-

fined in the penitentiary, and then divide the aggregate of these figures by twelve and make the quotient their verdict; that this agreement was carried out, and the result was the verdict returned into court'' (p. 152). The sole ground on which the contention is made in the instant case is that the slips of paper were found in the room where the jury had been deliberating. We submit without more that a charge of a jury's misconduct having no other foundation than presumptions cannot, in reason, under precedent and with a proper regard for the enforcement of the criminal law, be sustained.

No error appearing authorizing a reversal the judgment is affirmed. All concur.