**STATE of Missouri, Respondent,**

v.

**Lawrence MOBLEY, Appellant.**

No. 49624.

Supreme Court of Missouri,

Division No. 2.

July 8, 1963.

Norman S. London, St. Louis, for defendant-appellant.

Thomas F. Eagleton, Atty. Gen., James J. Murphy, Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Judge.

This defendant was convicted of second degree burglary and stealing in the Circuit Court of the City of St. Louis. He was also charged with sundry prior convictions; the court assessed his punishment at ten years' confinement for the burglary and five years for the stealing, the terms to run consecutively. Defendant was and is represented by counsel of his own choice and the case has been briefed. No point is made on the sufficiency of the evidence, and our recital of the evidence need not be made in any great detail.

The Ambrose Package Liquor Store at the corner of Kingshighway and Cates Avenue in St. Louis was protected by a burglar alarm system which would become activated upon any entry after the alarm was set. At midnight on November 27, 1961, the night manager set the alarm, locked the place and left; the inside was

left well illuminated, as was the custom. At 3:52 a. m. on November 28, 1961, the burglar alarm registered in the central office of the operating company, the Potter Electric Alarm Company; the operator immediately called the police on a direct wire, and notified the owner of the business, Mr. Isadore Newman. Two police cars answered the call, a sergeant's car and the regular district patrol car. The sergeant's car arrived first. In that car were Sgt. James McGauley, Jr., and Patrolman Warren Johnson who happened to be talking to the sergeant when the call was heard. They were only three or four blocks from the scene and they estimated that they arrived within approximately two minutes. Officer Johnson testified, in substance: that as they approached the liquor store he saw a man moving around inside; as they pulled up to the front window Johnson got out with his revolver drawn, the man ran from the rear to the front, and Johnson called to him to halt, that they were police officers; the man, however, whirled around, stepped through the shattered glass of a side window, and started to run toward the rear; Johnson stepped over to a point where he could see him, yelled at him again to halt, and then fired three shots at him. One took effect, entering the right buttock and emerging from the lower abdomen; the man fell along the side of the building, toward the rear. Johnson testified that this man had never gotten out of his sight, and he definitely identified defendant as the intruder. The sergeant saw only a part of the proceedings, as he was apparently trying to cross behind the car to get closer; he stated that for a short time the man stopped at the front window with his hands raised, and that he later saw him running down a "gangway" as Johnson fired. When found, defendant was lying more or less slumped against the rear bumper of a car. At about this stage of the proceeding, the district patrol car arrived and those officers proceeded to call a conveyance to take defendant to a hospital. He was moved there on a stretcher.

The officers searched defendant rather casually on the spot; they found his billfold and name, untied a mask (possibly a scarf) from around his neck, found a screwdriver in his side pocket and a pair of gloves near him on the ground. At the hospital $24 in currency and some keys were found on him; his clothes were sent to the police laboratory for examination. Johnson testified that he saw no blood on defendant at the scene; McGauley testified that he was bleeding considerably.

When the owner arrived, the premises were entered and examined. A large side window, approximately four feet wide and five or six feet high, had been shattered, leaving a hole described as 32 x 24 inches with some rather jagged places left near the bottom. Some of the glass had apparently been taken out and laid outside, the rest being shattered and lying both inside and out. Three cash registers and a change drawer had been forcibly broken open. Currency was found to be missing from a cigar box in which the proceeds of money order sales were kept; Mr. Newman, after checking, testified that the amount so missing was $44. This box had been placed on a lower shelf, but was found under the broken window, empty except for a few pennies. There was no evidence concerning money missing from cash registers. Fragments of the broken glass were delivered to the police laboratory for examination. There was expert testimony that glass fragments taken from defendant's clothing were identical in density with fragments found at the broken window; also, that the refractive index of each of the two groups was identical; these were supposedly recognized comparative tests.

The State offered evidence of prior convictions as follows, all on pleas of guilty: two of larceny of motor vehicles, two of second degree burglary, two of second degree burglary and larceny, one of tampering with a motor vehicle, and one of stealing over $50. In two instances pleas had been entered to three offenses on the same day and sentences were imposed to run concur-

rently, these being for two and one-half years and four years, respectively. Defendant had thus served sentences in the Intermediate Reformatory, the State Penitentiary, and the St. Louis Workhouse. On cross-examination defendant admitted these convictions and, in fact, seems to have admitted an additional conviction for burglary and larceny which fell in with his second group of guilty pleas. On this evidence the court made a specific finding of prior felony convictions.

The defendant testified in substance: that he had been working on a toilet and sink for his mother-in-law at her beauty shop a short distance from this store, leaving there a little before 4:00 a. m.; that as he drove along he was suddenly seized with an impelling desire to urinate, turned off Kingshighway, parked on Cates near this store, and entered a "gangway" where he relieved himself; that he had walked about halfway out when he was shot; that he fell, and tried to protect himself behind or under a car; that he had not been inside the store at any time, had not broken the window, had stolen nothing, and did not have any mask or scarf, tools, or gloves; that he explained to the police what he was doing there. The defendant did not put his character in issue.

Cora Taylor, defendant's mother-in-law, corroborated his testimony in part by testifying that he was at her place from about 11:30 p. m. to shortly before 4:00 a. m. putting in a sink which she wanted for service the next day in her shop; that he was late because he had been working somewhere else earlier.

■ Defendant briefs three points; the first and most serious concerns the closing argument of the Assistant Circuit Attorney. In order to explain this accurately, we think it better to quote the pertinent parts, omitting objections, requests, motions, colloquies and rulings. The argument was interspersed with objections and motions sufficient to preserve the points now raised. To facilitate the matter, we have arbitrarily inserted numerals in the quoted portions. In part, counsel for the State said: (1) "In this case, I appear here as a representative of the decent, law-abiding people of the community. He just represents a client, a guilty client, by the way, and you represent our very system of justice itself. It is as simple as that. (2) * * * possibly the missing twenty-dollar bill might be very easily explained by the defendant, himself; after all, he is a man with a great deal of experience in this sort of thing. (3) * * * He said to you that it is impossible that this occurred, because it happened so quickly; the alarm went off at 3:51, the police were there within a very, very short time. Why, of course; we are dealing here with a professional burglar, a man who has had a great deal of experience in burglary, by his own admissions. (4) * * * And then, you consider the most important thing of all. You consider the criminal record of the witness who testified and asked you to believe him.

"(5) Mr. Hailey and Mr. Newman don't have any criminal records. These police officers have no criminal records, they are part of the organization which you and the rest of the people of this community have established to protect yourselves and your families.

"Now, who is it who points the finger at these witnesses and says that they are liars and perjurers? Why, it is Lawrence Mobley. And who is Lawrence Mobley? Lawrence Mobley is a notorious criminal, a professional burglar—* * * Lawrence Mobley is a notorious criminal, a professional burglar, a man who has shown, by his long record, that he has no regard or respect for the rights of other people. He has shown by his conduct that he has nothing but contempt for you and for all— (6) * * * Surely a man who has dedicated himself to a life of crime— * * * his oath cannot be accepted, his oath cannot prevail over the oath of law-abiding, God-fearing, respectable and respected citizens (7) * * * The evidence in this case shows Lawrence Mobley to be an habitual

criminal. * * * It shows him to be an habitual criminal, a professional burglar, and a dangerous criminal to be let loose upon society. You, and only you, by your verdict, can deter him. You, and only you, by your verdict, can send word to other Lawrence Mobleys that the people of this community did have the intelligence and determination to defend ourselves against their deliberations. The Lawrence Mobleys are at war with the people and, if you don't defend us, we are helpless." The only objection or motion sustained was in a ruling which struck the "first part" of the second paragraph of (5) above, and instructed the jury to disregard it.

Defendant's counsel concedes here, as he must, that the State may legitimately comment on defendant's prior convictions as affecting his credibility; and see § 491.050, RSMo 1959, V.A.M.S. But he further says that here counsel repeatedly referred to defendant's *character* and almost continuously appealed to the jury to convict him because of his past record; and consequently, that counsel's motions to strike, and for instructions to the jury, and for a mistrial should have been sustained. We note that only in one instance did the court strike any part of the foregoing argument or instruct the jury to disregard it; that one action could hardly suffice here. After much consideration, we hold that the State's counsel here so far overstepped the bounds of legitimate argument as to create reversible error, and that the rulings may not be sustained by the cloak of discretion so broadly conferred upon trial courts. The following statement in defendant's brief is apropos. "The Defendant's criminal background is certainly not to be commended, but under our law he is still entitled to a fair and impartial trial on the offense on which he is presently charged." At certain points the State's counsel did argue credibility, vigorously and legitimately. But the attempt now to justify all this argument as such seems rather forced and unreal. Actually, we must consider the argument from the point of view of the jury, —the ordinary jury, —and not

in the light of some subsequently expressed intent of the Prosecutor or the State. Thus, was the State seeking to get a conviction in this case because of defendant's prior record, either in whole or in part?

The law is well settled that the only legitimate purpose of an argument concerning prior convictions lies in its bearing upon the credibility of the defendant. State v. Jones, Mo., 221 S.W.2d 137; State v. Jones, 249 Mo. 80, 155 S.W. 33; State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87, 103 A.L.R. 339; State v. Baber, Mo., 297 S.W. 2d 439; State v. Reagan, Mo., 108 S.W.2d 391; State v. Mitchell, Mo., 86 S.W.2d 185; State v. Cook, Mo., 282 S.W.2d 533, 535; State v. Wellman, 253 Mo. 302, 161 S.W. 795. It is improper to argue prior unconnected crimes as reflecting upon the defendant's character or as a basis for a conviction in the case on trial. See the cases just cited. And certainly the prior convictions could not have been argued here as a ground for a heavier punishment, as was permissible under the prior law, State v. Robertson, Mo., 328 S.W.2d 576, 584, for the court now assesses the punishment.

Even in the admission of evidence, proof of separate and distinct crimes is not admissible "when not properly related to the cause on trial," for such evidence violates the defendant's right to be tried for the offense for which he is then on trial. State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 922–923; State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 306–307. That rule has some analogy here, and there is no contention that any of defendant's prior offenses had any connection with the offense for which he was on trial, nor would they tend to establish any of the elements held to constitute exceptions, as set out in Reese, supra, at 274 S.W.2d loc. cit. 307. The evidence was admissible here, initially, for the sole purpose of establishing a basis for the assessment of punishment, after a finding of guilty. When the defendant testified, it also became material on the question of his credibility. But, on no theory did it

ever become proper, either as substantive evidence or by way of comment upon the evidence, to prove defendant's guilt in the case on trial.

■■ When we examine in some detail the arguments made here, we find that (2) and (3) refer to defendant's experience in burglary as indicating a suggested ability to explain the discrepancy in the money stolen and the money found, and an ability, from such experience, to perform so many different acts within such a short period. These remarks had no bearing on defendant's credibility and they constituted poorly veiled comments upon defendant's character. The point now made that defendant's past history of burglary demonstrated a proficiency therein, actually amounts to an admission that the Prosecutor was thus using the fact of prior convictions as substantive evidence of guilt, and not merely as affecting defendant's credibility. Much of (4), (5) and (6) constituted arguments on credibility; the trial court saw fit to strike out a part of (5); we are not quite sure what part this was (i. e., the "first part"), nor do we think the jury understood. Enough remained, however, to remind the jury that the defendant had placed himself beyond the pale, that he had dedicated himself to a life of crime, and that he had demonstrated his contempt for society. Upon this background came the following (No. (7), set out again here at the expense of repetition): "The evidence in this case shows Lawrence Mobley to be an habitual criminal. * * * It shows him to be an habitual criminal, a professional burglar, and a dangerous criminal to be let loose upon society. You, and only you, by your verdict, can deter him. You, and only you, by your verdict, can send word to other Lawrence Mobleys that the people of this community did have the intelligence and determination to defend ourselves against their deliberations. The Lawrence Mobleys are at war with the people and, if you don't defend us, we are helpless." Objection was made after the first sentence, and prior objections and motions were renewed. All

these were overruled. In these statements the Prosecutor made no pretense of arguing the question of credibility. We are well aware of the fact that a prosecutor is entitled to argue the necessity of law enforcement as a deterrent to crime; State v. Turner, Mo., 320 S.W.2d 579; State v. Laster, Banc, 365 Mo. 1076, 293 S.W.2d 300. This means, generally, the right to argue the necessity of a conviction in the case on trial, based on the evidence in that case. Here the Prosecutor went further and argued the defendant's individual character and criminal proclivities, as shown by his past offenses, and the necessity of deterring him, not as an example to others, but to prevent further injury to society by him. We have concluded that the argument as a whole, in which the repetition and the persistency employed were major factors, constituted reversible error. All lawyers and judges know that a jury's knowledge of prior convictions is, in itself, a most damning thing in the trial of a criminal case. When used for legitimate purposes, the defendant must take his chances on this. But prosecutors should not seize upon such an opportunity to further prejudice the defendant by undue repetition and insinuations, or to convey the idea of guilt by reason of the prior offenses. The arguments made here bear some analogy to those in State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87, 103 A.L.R. 339, where the conviction was reversed for prejudicial argument, although there the argument bore directly upon the question of punishment. We have considered the arguments of defense counsel brought here in a supplemental transcript, to which the State now says it was retaliating. Therein counsel argued at various points and in different ways the question of credibility, stated that the case was to be determined solely on the evidence in the case, and that defendant's prior record could be considered only on the question of credibility; he also argued the interest of the police officers in obtaining the conviction of a man whom one of them had shot. We see nothing in that

argument upon which we could rule the State's argument to be retaliatory, except in so far as the latter was actually confined to the question of credibility.

■ We would have a somewhat different question here if the court had taken some action in connection with the erroneous parts of the argument; we might then need to determine whether the drastic remedy of a mistrial was required. We do not reach that point here, for essentially the court took no action. The State has cited several cases where the use of epithets in argument was held not to be prejudicial. State v. Richmond, 321 Mo. 662, 12 S.W.2d 34; State v. Ayers, Mo., 305 S.W.2d 484; State v. Eison, Mo., 271 S.W.2d 571; State v. Armstead, Mo., 283 S.W.2d 577; State v. Harris, Mo., 351 S.W.2d 713. The rulings in those cases involved a somewhat different principle. In those cases, generally, it was held that the evidence created an inference reasonably justifying the application of such epithets, although such language should ordinarily be avoided. Here we have no question as to what the evidence does or does not support, but a positive rule of law that an evidential showing of prior convictions shall not be used as the basis of an attack on the defendant's character, or as indicating guilt in the case on trial. Each case and each argument vary, but we are convinced here that, in its totality, this argument was prejudicially erroneous, particularly in view of the almost complete lack of action by the trial court.

■ The second point concerns the refusal of a proffered instruction, the giving of another instruction, and a verdict form. All of these dealt with a submitted offense of stealing property of a value less than $50, independent of any burglary. If such a submission is justified upon another trial, counsel for the State may consider the suggestions now made in connection with its own instruction and the verdict form. We need not discuss the propriety of defendant's proffered instruction, for if the field is adequately covered in one or more instructions, the same substance need not be repeated in another. We note, however, that there appears to be some confusion or inconsistency in the phrase of the proffered instruction, —"and unless you so find the facts to be you will acquit the defendant altogether," when related to the first part of the instruction dealing with burglary.

■ We shall comment briefly on the third point, in view of another trial. Counsel complains of the denial of his requests for leave to examine, or to have the court examine, any reports or statements made by the two police witnesses. These oral requests were made when Officer Johnson and Sergeant McGauley were on the stand. Counsel "felt" that such reports or statements might develop inconsistencies upon cross-examination concerning the particular witness' observations and his recollection of defendant's statements at the scene. These requests obviously proceeded upon the assumption that there were such reports or statements; there was no showing as to who made the usual police report or that there was any written statement or report made by either witness, or that any such documents would contain anything of value to defendant; Officer Johnson expressly stated that he did not make the police report. This whole request and inquiry was vague and somewhat confusing, and we can only guess that counsel sought to examine the police report, in order to see if it recited statements made orally by either of these witnesses, together with any possible written statement by either or both.

No effort was shown to subpoena the police report in advance of trial, or to examine its contents by any method of discovery, nor indeed to learn if there were any written statements. The trial court should not be ambushed by any such shotgun procedure as this. See State v. Gilliam, Mo., 351 S.W.2d 723. There is nothing in the substantive holding of the case of State v. Crayton, Mo., 354 S.W.2d 834, cited by defendant, which aids him here, nor are the facts similar; and as justifying the court's

action under the present circumstances, see State v. Redding, Mo., 357 S.W.2d 103. In the case of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, relied on by defendant, the court was applying its supervisory power over *federal* courts, and the decision involved no question of constitutional due process. Nor are we concerned with the federal statute, § 3500, Title 18, U.S.C.A., announcing a rule of federal practice, which was apparently enacted for the purpose of limiting the effect of the Jencks decision.

For the errors noted in the final argument, the judgment is reversed and the case remanded for a new trial.

All of the Judges concur.