**STATE of Missouri, Respondent,**

v.

**Karen P. LAWSON, Appellant.**

**No. WD 31777.**

Missouri Court of Appeals, Western District.

Jan. 26, 1982.

Lee M. Nation, Nation & Curley, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kirk Lohman, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, C. J., Presiding, and CLARK and LOWENSTEIN, JJ.

SOMERVILLE, Chief Judge.

A jury found defendant guilty of arson in the first degree, a class B felony, Section

---

1. References to rules are to Missouri Rules of Court, V.A.M.R.

569.040, RSMo 1978,[1] and assessed her punishment at five years imprisonment, the minimum term prescribed by Section 558.-011, RSMo 1978. After an unavailing motion for new trial, judgment was entered, sentence was pronounced in conformity with the minimum term assessed by the jury, and defendant appealed.

Defendant's single point on appeal—error on the part of the trial court in overruling her objection to prosecutorial "statements" made during closing argument because they went beyond the evidence and were prejudicial—is postulated on an isolated portion of the prosecutor's closing argument. Hence, a verbatim reference to the entire incident is necessary to put defendant's single point in proper perspective. During the waning moments of his closing argument, the prosecutor, with reference to punishment, addressed the jury as follows: "Now, I want you to think about the Astorino house and their twenty-two year old daughter, who has trouble getting up and down stairs, and their five year old boy, and the two kids that were up there in this two-story house. I want you to think about what would have happened had Mr. Astorino not been lucky enough to see this man come across the back yard. *When you think about the screams and about the burning flesh and about —.*" (Emphasis added.) Defense counsel interrupted at this point, and objected on the grounds that there was no evidence to support the italicized portion of the argument and that it was made to "incite" and "inflame" the jury. No request was made for a mistrial or for any other form of affirmative relief. The trial court overruled defense counsel's objection and the prosecutor immediately concluded his closing argument as follows: "When you think about what could have happened out there that night had not Mr. Astorino been lucky enough to catch him, and you think about the callousness and total disregard that she showed in getting Steven Abbott—the man who is sitting right there, waiting to see whether or not you bought his story—then I don't think you're going to have any problem in coming back with a fifteen-year sentence."

Although defendant has not questioned the sufficiency of the evidence to sustain her conviction, the sole point she advances on appeal is so integrally related with the evidence that its disposition requires more than an abbreviated statement of facts.

On August 4, 1979, Mr. and Mrs. Astorino and their two children moved into a two-story rental house at 3220 Charlotte, Kansas City, Missouri. One of the children was a twenty-two year old daughter who was mentally retarded and had difficulty traversing steps. The daughter's bedroom was upstairs. The other child was a five year old son who occupied a downstairs bedroom with his parents. A girl friend of the daughter was spending the night with her.

At approximately 1:30 A.M. on the morning of August 5, 1979, Mr. Astorino went into the kitchen of the house to dress in response to a request by his wife that he go and purchase some cough medicine to alleviate a bad cold she was suffering from. While still in the kitchen, Mr. Astorino, by chance, looked out the kitchen window and saw a man carrying a burning newspaper and approaching the outside basement door. The basement door and a doghouse adjacent thereto were set afire. When the fire started, the couple's twenty-two year old daughter and her girl friend were asleep in an upstairs bedroom. Mr. Astorino quickly alerted the occupants of the house and, fortunately, the fire was extinguished before it got out of hand. A pickle jar containing a "cloth wick" and a red fluid, later analyzed as a "kerosene derivative", was found in the yard.

After alerting the occupants of the house, Mr. Astorino gave chase to the man who set the fire. Although the arsonist temporarily escaped down an alleyway, he was later apprehended and identified as Steven Abbott. Shortly thereafter the police arrested

---

1. Defendant was charged with "knowingly acting in concert with another" in committing the offense.

defendant Karen Lawson (Steven Abbott's former wife) on the basis of information voluntarily supplied by Steven Abbott during custodial interrogation. A confession obtained by the police from defendant Karen Lawson following her arrest was introduced by the state as part of its case without objection.[2] Defendant, among other things, admitted to the police that she requested Steven Abbott, her former husband, to "burn the house for her" because she felt she had been "treated wrongly" since she previously rented the house and had been evicted by the owner for non-payment of rent. She also admitted that she supplied the matches which Steven Abbott used to start the fire. Although Steven Abbott took the stand on defendant's behalf and attempted to exonerate her from any complicity in the arson, he freely admitted his own guilt and, on cross-examination, callously stated that he "really didn't care" if "people" were in the house when he set it afire.

Unfortunately, prosecutorial arguments are an ever increasing source of appeal. This court is frank to admit that it never ceases to be amazed why prosecutors frequently persist in walking the edge of the precipice of prejudice during closing argument. Doing so is fraught with danger, and for that reason should be studiously avoided. There is no escape from the fact that prosecutorial arguments seldom, if ever, follow a standard semantic pattern because the evidence which they purport to draw upon varies from case to case. Consequently, appellate courts are forced to turn to a spectrum of broad rules and principles in order to determine whether a prosecutorial argument in a given case crossed or stopped short of the precipice of prejudice. After doing so, this court concludes that the prosecutorial argument complained of in this case, as hereafter demonstrated, never reached the fatal precipice.

■ Prosecutorial arguments which comport with the evidence and reasonable inferences drawn therefrom are generally stamped with legitimacy. *State v. Baldwin*, 358 S.W.2d 18, 27 (Mo.1962); *State v. Hill*, 613 S.W.2d 205, 207 (Mo.App.1981); and *State v. Bolden*, 525 S.W.2d 625, 635 (Mo. App.1975). Broad discretion is vested in the trial court, due to its observational edge, to determine the latitude of prosecutorial argument and its exercise thereof will not be disturbed on appeal unless it has so abused its discretion that prejudice has resulted to the defendant. *State v. Tate*, 468 S.W.2d 646, 650 (Mo.1971); *State v. Hill, supra*, 613 S.W.2d at 207; *State v. Smith*, 527 S.W.2d 731, 733 (Mo.App.1975); and *State v. Kimmins*, 514 S.W.2d 381, 382 (Mo.App.1974). As noted in *State v. Hill, supra*, 613 S.W.2d at 207, these broad rules and principles lose all sense of verity if not cautiously applied in light of the particular facts of each individual case, and constant vigilance must be exercised at the appellate level to prevent glossing over truly prejudicial prosecutorial arguments under the guise of judicial deference.

■ The evidence in this case discloses that both defendant and her former husband, Steven Abbott, whom she requested to burn the house, were callously indifferent about the safety of any human beings who might be present in the house when it was set afire. Defendant was solely concerned with heaping vengence upon the owner of the house because she felt she had been "treated wrongly" when she was evicted for non-payment of rent. Steven Abbott, who served as a tool to carry out defendant's vengence, with equal callosity admitted on cross-examination that he "really didn't care" if "people" were in the house when he set it afire. In this connection, it should also be borne in mind that Mr. and Mrs. Astorino's mentally retarded daughter and her girl friend were asleep in one of the second floor bedrooms when the fire started. From this combination of facts, a reasonable inference could be drawn that but for Mr. Astorino's presence

**2.** A pre-trial motion to suppress defendant's confession was overruled following an evidentiary hearing, and defendant makes no contention on appeal that her confession was constitutionally inadmissible.

in the kitchen enabling him to see the crime of arson being perpetrated, the lives of the occupants, particularly those asleep upstairs, would have been seriously endangered. When the context of the complained of prosecutorial argument is placed in proper perspective, i.e., when that which preceded the objection is read in conjunction with that which succeeded it, it is patent that its thrust was the disastrous aftereffect which might have occurred from defendant's callous indifference but for Mr. Astorino's fortuitous presence in the kitchen when the criminal act occurred. Although the prosecutor may have been a bit melodramatic, his argument, as above demonstrated, was nevertheless founded on a reasonable inference drawn from the evidence. Moreover, defendant has failed to point out how she was prejudiced by the prosecutorial argument which is the focal point of her appeal. The argument clearly related to the assessment of punishment. In this frame of reference, one has to strain to the breaking point to attribute any taint of prejudice to the argument because the jury assessed defendant's punishment at five (5) years imprisonment, the minimum punishment prescribed by law. Going a step further, defendant's confession effectively augers against any claim that the prosecutorial argument unduly tipped the scales against her with respect to the jury's determination of guilt.

Defendant's reliance upon cases such as *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524 (1947), and *State v. Mobley*, 369 S.W.2d 576 (Mo.1963), to support her position on appeal is grossly misplaced. In *Tiedt*, the prosecutor persistently and repeatedly overstepped the bounds of prosecutorial argument and created an overwhelmingly prejudicial atmosphere which pervaded the entire case. In finding reversible error, the court commented that it was not faced "with an instance of a single breach arising more or less spontaneously under the stress and excitement of contest", but with repeated and persistent indulgences in flagrant disregard of the trial court's rulings. *State v. Tiedt,*

*supra*, 206 S.W.2d at 528. In *Mobley*, repeated and persistent remarks by the prosecutor during closing argument regarding defendant's character and criminal proclivities (purportedly on the bases of previous convictions), and the necessity of protecting society from further transgressions by returning a guilty verdict, went beyond the bounds of legitimacy notwithstanding the state's proffered theory that they simply bore on defendant's credibility as a witness. *State v. Mobley, supra*, 369 S.W.2d at 579–80. Suffice it to say, in the instant case the complained of prosecutorial argument was an isolated incident, drawn from evidence before the jury, and defendant failed to show or demonstrate any resulting prejudice.

Judgment affirmed.

All concur.