**STATE of Missouri, Respondent,**

v.

**Norman E. GOODMAN, Appellant.**

**No. WD 37570.**

Missouri Court of Appeals,
Western District.

June 2, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 29, 1987.

Application to Transfer Denied
Nov. 17, 1987.

Kathleen Murphy Markie, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and GAITAN, JJ.

GAITAN, Judge.

This is a direct appeal from a jury conviction for kidnapping, in violation of § 565.-110, RSMo 1978 and sodomy, in violation of § 566.060.1(1), RSMo Supp. 1984. The judgment is reversed and remanded.

Defendant presents a sole point which, in summary, charges that the trial court erred in permitting the prosecution, over objection, to cross-examine defendant by using testimony from other trials involving other crimes. Defendant requested a mistrial because the testimony used did not fall into any recognized impeachment category and because no proper foundation was laid for the use of said testimony.

Defendant does not challenge the sufficiency of the evidence. Consequently, it is unnecessary to go into a detailed restatement of the facts. A summary shall suffice.

About 3:00 p.m. on February 17, 1985, the victim, D.M., a twenty year-old single female student at the University of Missouri, left her apartment to walk to a nearby 7–11 to purchase cigarettes. As she approached the 7–11 store, she observed a dark blue automobile approaching her from the rear. She thought it was a friend of hers. She proceeded to the 7–11 store, purchased the cigarettes, and started to walk home. The same automobile approached her again from the rear, crossed in front of her, and pulled into a local school parking lot. The victim, thinking the person in the automobile was a friend, approached the automobile. Due to the glare of the sun on the windows, she could not see the occupant clearly. She opened the passenger door and then realized that the occupant was not the friend she thought was in the automobile. At this point, defendant grabbed her arm and pulled her inside the automobile. He held onto her arm, drove to a nearby isolated area, and forced the victim to commit an act of oral sex upon him. He then drove the victim back to the 7–11 store.

Defendant testified that the victim flagged him down and suggested they get "high". Defendant not only denied forcing the victim to perform the sodomy act, but stated that she was the aggressor and committed the act on him voluntarily. It had been determined previously that defendant was a persistent offender. He had one prior conviction for rape. During cross-examination, over objection, defendant was asked certain questions about the details of the events to which he testified during his direct testimony. That cross-examination begins as follows:

Q. Let me see if I have down right what you are saying. You were driving down the street and Donna is the one that flagged you down?

A. Yep.

Q. She immediately suggested smoking a joint? Those were the first words out of her mouth; is that right?

A. No. She said did I want to get high.

Q. Well, same. What did you take that to mean?

A. Smoke a joint.

* * * * * *

Q. Started fondling you, and then she proceeded to perform oral sex without your asking; is that right?

A. Yeah.

Q. Does this happen to you quite a bit?

A. No.

Q. Doesn't happen to you, girls force themselves on you and force you into sexual acts?

A. Nope.

The prosecutor went further in his cross-examination to ask:

Q. Have you ever told stories about other girls doing that?

A. Nope.

Defense counsel then objected stating he believed the prosecutor was going to attempt to use a transcript from a prior case and that this testimony would be "totally inadmissable as far as any type of questioning." Defense counsel further stated in his objection:

I think if he is going to go into that questioning any farther as far as telling that story, if he can supply us with the source it came from. I would object to its admissibility to begin with and request the Court admonish Mr. Moseley, instruct Mr. Moseley not to bring out the circumstances of any prior statements made.

The prosecutor then delved into this area further by asking:

Q. Okay. Again directing your attention to a statement you made on June 21 about a May 1981 incident. 'She got in and asked her—I asked her did she mind having music on because I turned on my radio. And she said, "No, I don't mind." She said, "Fire it up." I said, "Fire up what?" And she said, "A joint." ' Do you remember making that statement?

A. I missed the question. You said '81?

Q. Uh-huh. It was a May 1981 incident that you are talking about, and this statement that you made on June 21

of '82. Do you remember making that statement?

A. I can't remember offhand.

Q. Okay. It doesn't sound familiar?

A. Not offhand.

Q. How about later the same date, June 21, '82, about a May incident?

A. This is '82 or—I thought you siad [sic] '81.

Q. Making the statement in '82 about something that happened in '81. Does that sound familiar?

A. No, it don't.

Q. Okay. Later on that same date there was a question asked of you. 'Okay. You got to the stop sign. What happened after that?' And you answered, 'Well, I kept going straight because I asked right or left.' ...

At this point defense counsel objected on the grounds that the prosecutor wasn't laying a proper foundation. The court overruled the objection.

Q. Start again with this second part of the statement. The question. "Okay. You got to the stop sign. What happened after that?" Answer: "Well, I kept going straight because I asked, 'Right or left?' And she said 'Straight ahead.' So I went straight on. She said straight ahead, so I went straight on up." The question: "What happened next?" Answer: "Well, while I was going down a little bit and stopped over a hill or something and all of the sudden she said, 'Turn.' I said, 'Turn where?' She said, 'Turn.' And I turned. There was a little road as I was coming along. And I had to whip it in there and turned onto it." Do you remember making that statement?

A. Not right offhand.

Q. Later in answer to a question, you said, "She leaned over the seat because I've got like bucket seats in my car, and she started grabbing ahold of my leg, started feeling on my leg?" Question: "What part of your leg?" Answer: "Had to be my thigh." Question: "Did she say anything?" Answer: "No. She just started grabbing. And she said, 'Are you sure?' and stuff like that.' Question: "What else did she say?" Answer: "I can't remember anything else that she said, just like come on to her." "And what was your impression of what she wanted?" Answer: "She wanted me to put her in the back seat or something and try to make love to her." Do you remember that happening? Do you remember that incident?

A. No, I don't have no bucket seats in my car.

Q. No. This was in 1982 you said that about May of '81. Did you have bucket seats then?

A. '82?

Q. June of '82 about an incident in May of 1981. Did you have bucket seats in 1981?

A. That's when I had my old car, I guess. Yeah, I had bucket seats in it.

Q. Do you remember making that statement?

A. Not right offhand.

Q. Okay. Now, how about a different date, on December 7 of '82. And this is about something that happened on January 21, 1982. You answered: "I was just driving slowly. I never did stop the car. And as I get right towards the corner of Church Street, a girl just, you know, walked right out in front, didn't walk in front of the car but kind of came towards the car, so I pulled over. She came and said, 'What do you want?' You know. And I wanted to say 'head.' And she said, 'Would you like a blow job?' " Do you remember that?

A. Yes. Yes. That was in Toronto. I was talking to a prosecutor.

Q. Okay. Later on the same date: "She told me make a right turn here, so I made a right, that is when she scooted over towards my side of the driver's side; and she started kind of

feeling along my legs and stuff." Do you remember testifying or talking about that?

A. No.

Q. Did that happen, or do you remember that happening?

A. No, it didn't happen.

Q. How about a little later here. Same statement that you are making. "I said, 'Where should I pull over?' And she said, 'Just go on down a little ways.' That's when she started feeling on my leg." And then you said, "Well, I went up to a street. We turned a left on another side street. And that is when she pulled my zipper down and started playing with me." Do you remember that?

A. No. Are you talking now or back then?

Q. No. I am talking about a statement that you made on December 7, 1982, about an incident that occurred on January 21, 1982.

A. I can't recall offhand, no.

Q. How about a question: "And you still had your pants on?" Answer: "Yes, I did." Question: "And how long did this go on for?" Answer: "Well, I had just turned a corner, and she had my zipper down and playing with me. I guess I kind of veered off and pulled over on the side of the street." Question: "What happened after that?" "By the time I pulled over, I had a pretty good hard-on. And I don't know, just, she started trying to give me some head right then as I pulled over." December 7, 1982, about something happening January 21 of '82. Do you remember that?

A. I can't remember offhand.

Defense counsel again objected, stating:

Your Honor, again, I am going to renew my objection to the improper foundation for this type of cross-examination. As far as specific things, I think the question was insufficient as to direct Mr. Goodman's attention to the time frame he was talking about. It was a general question. If he ever told stories about girls. Never told anything like that again. I think it was too broad, insufficient to direct Mr. Goodman's attention to the time. I request that all that testimony be stricken from the record. I would also request a mistrial at this time.

The court overruled the objection and denied defense counsel's request that the testimony be stricken or a mistrial declared.

The cross-examination by the State regarding prior statements of the defendant was improper for several reasons. First, there was no proper foundation laid. Secondly, if the statements were prior inconsistent statements they reference matters of a collateral nature and were improper methods of impeachment.

The determination of whether or not a prior statement is inconsistent must first be presented to the judge. *State v. Frank*, 685 S.W.2d 845, 849 (Mo.App.1984). The court in the case at bar never ruled upon whether the statements were inconsistent. For the purpose of this review, we presume that the defendant's negative response when asked whether he has told similar stories, is inconsistent with the alleged statements presented to defendant by the State. Further, the prosecutor did not lay any foundation as to the person to whom the statements were made, and the time, place, and circumstances of the prior statements. *See e.g., State v. Graves*, 588 S.W.2d 495, 498 (Mo. banc 1979).

The dissent argues that the record reveals that there was substantial compliance with the requirement of a proper foundation because "it is clear appellant knew and understood to whom the statements were made ..." The dissent bases this assertion on the fact that defendant responded on one occasion that the statement was made during a conversation with a prosecutor in Toronto. Defendant only offered this in response to one of the statements. We cannot assume that it applies to all the statements, especially since the statements allegedly were made on two different dates regarding two different "incidents". There was no indication by the prosecutor as to whom the other statements were made or where. The only information supplied in

laying a foundation was the date. An examination of the transcript reveals that in spite of this, defendant was often confused about when the statements allegedly were made. In short, there is nothing upon which the trial court could determine whether defendant could properly be impeached with the alleged statements.

Even assuming the statements were inconsistent and a sufficient foundation were laid, they were improperly used by the State to impeach because they concerned collateral matters. Although a witness may be impeached by extrinsic proof of a prior inconsistent statement as to material matters, counsel is bound by the answer of the witness on collateral matters. *Lineberry v. Shull*, 695 S.W.2d 132, 136 (Mo.App. 1985). "If a fact may be shown in evidence for any purpose independent of contradiction it is not collateral." *Overfield v. Sharp*, 668 S.W.2d 220, 223 (Mo.App.1984), *quoting, Frechin v. Thorton*, 326 S.W.2d 122, 126 (Mo.1959). Any "incidents" which may have occurred in defendant's past were not relevant to the issues in the present case. Obviously, the statements were used solely to impeach defendant and had no proper purpose independent of impeachment. Once defendant responded negatively to the State's question about whether defendant has told similar stories about other girls, the State was bound by that answer. Therefore, the State should not have been permitted to continue the cross-examination regarding the alleged prior statements.

The dissent argues that the interrogation of the defendant was admissible to show a common scheme or plan. Evidence of specific instances of past crimes, or other wrongful acts may be admitted to prove a common plan or scheme embracing the commission of two or more crimes so related that proof of one tends to establish the other. *See e.g., State v. Young*, 643 S.W.2d 28, 30 (Mo.App.1982). The admissibility of evidence of other crimes is determined by whether its probative value outweighs its prejudicial effect. *State v. Alexander*, 693 S.W.2d 216, 220 (Mo.App.1985). However, the State did not lay the proper

foundation to submit under this theory of admissibility.

The prosecution did not attempt to prove the similarity of other crimes defendant committed in the past to the present crime. The cross-examination may have done this indirectly, but the direct result was to show the similarity of "stories" defendant has told in the past to his testimony in the present case. The prosecutor, however, did not present sufficient evidence of the circumstances of defendant's past statements for the trial court to properly determine whether the probative value outweighed the prejudicial effect of the evidence.

It appears that the State took an unnecessary gamble by cross-examining the defendant on these alleged prior statements. The cross-examination was highly prejudicial to defendant. Before the prosecutor questioned defendant about any of the alleged prior statements, defense counsel objected to the prosecutor using any testimony from past similar cases. Defense counsel also objected more than once that no proper foundation was laid. These objections were raised in defendant's motion for a new trial. We do not agree with the dissent that we can review only for plain error. Even if that were the case, we believe that the cross-examination was so prejudicial as to constitute manifest injustice.

It is apparent that this cross-examination was risky and unnecessary. It was highly prejudicial to defendant and, because the trial court took no corrective measures, reversible error was injected into the case. It is for the aforesaid reasons that the judgment of the trial court must be reversed and the case remanded for retrial.

LOWENSTEIN, P.J., concurs in separate opinion.

MANFORD, J., dissents in dissenting opinion.

LOWENSTEIN, Presiding Judge, concurring.

I concur in the reversal of the judgment. This case was tried in August of 1985. The prosecutor asked the defendant about sto-

ries concerning girls made in June of 1982 concerning a May 1981 incident. The defendant had admitted a prior rape conviction. The defendant objected because this questioning brought "out the testimony of that case, which is totally inadmissible...." The objection was overruled. As the dissent notes, the objection did not preserve this matter, subjecting review under plain error. Rule 30.20. The prosecutor continued to ask about the defendant's explanation of the May 1981, "incident," and also asked about an "incident that occurred on January 21 of 1982." In my opinion, the whole line of questioning was improper and inadmissible for any reason. It is therefore unnecessary to consider whether the statements lacked a proper foundation.

When Goodman took the stand he was subject to cross-examination and impeachment the same as any witness. Section 546.260 RSMo 1978. His prior convictions as the accused and as a witness are admissible for impeachment purposes § 491.050 RSMo Supp.1984. *State v. Powell,* 632 S.W.2d 55, 58 (Mo.App.1982). The state's right of cross-examination under these circumstances is not unlimited. It is entitled to show only the nature and number of prior convictions, "and is not entitled to engage in cross-examination with respect to details of the prior crimes." *State v. Newman,* 568 S.W.2d 276, 281 (Mo.App. 1978); *See also State v. Green,* 707 S.W.2d 481, 482–83 (Mo.App.1986). In *Newman* and *Green* convictions were reversed because of questions concerning the length of time the defendant served for the prior convictions.

The Missouri Supreme Court in *State v. Scott,* 459 S.W.2d 321 (Mo.1970), held that cross-examination about seven year old convictions for break-ins at locations close to the one at issue constituted reversible error. The court held the questions were not relevant to show habit, design or intent because seven years had passed. *Id.* at 324. The court decided the inquiry into details of the prior convictions served no purpose other than to show a tendency of the defendant to commit the crime for which he was presently being tried. The court said § 491.050 permits impeachment based on prior convictions, but does not permit the state to use evidence of guilt in the prior case as evidence of guilt in the case at bar. *Id.* at 324. What was done in *Scott* is exactly what happened here—the state went beyond prior crime impeachment and used the similarity to prove guilt. The state's questions violated the defendant's right to be tried for the offense at issue. *State v. Mobley,* 369 S.W.2d 576, 581 (Mo.1963). *Mobley* involved improper argument, but the following language is appropriate here:

> We have concluded that the argument as a whole, in which the repetition and the persistency employed were major factors, constituted reversible error. All lawyers and judges know that a jury's knowledge of prior convictions is, in itself, a most damning thing in the trial of a criminal case. When used for legitimate purposes, the defendant must take his chances on this. But prosecutors should not seize upon such an opportunity to further prejudice the defendant by undue repetition and insinuations, or to convey the idea of guilty by reason of the prior offenses.

369 S.W.2d at 581.

In *State v. Shepard,* 654 S.W.2d 97 (Mo. App.1983) the defendant, over objection, was asked about how his prior guilty plea conviction of a misdemeanor had been; "reduced down from a felony." *Id.* at 99. The opinion of the court in *Shepard* stated, as should this court in this case:

> The truth is the insidious combination indulged by the State is the antithesis of what the well-established rules of evidence seek to achieve-to allay any inference or supposition that "once a criminal always a criminal." When evidence of separate and distinct crimes offered by the State goes beyond the perimeters just mentioned, it is prejudicial. Otherwise, the pervasive logic underlying the established rules of evidence is flawed. If admission of such evidence is not prejudicial, rules of evidence prohibiting its admission are unjustified. One would be

hard put to champion a contrary argument.

\* \* \* \* \* \*

*Nothing short of declaration of mistrial could purge the prejudice tainting the instant case unless one yields to the platitudinous approach of sweeping it aside as harmless error.* (Emphasis added.)

654 S.W.2d at 101.

The nature of the improper evidence within the context of this case amounts to a manifest injustice or miscarriage of justice and mandates a reversal.

MANFORD, Judge, dissenting.

I must dissent for the following reasons:

First, the majority opinion does not dispose of this matter under the applicable and correct standard of review. The majority opinion treats this matter as if the issues presented to this court have been properly preserved. Such disposition flies in the face of the record.

Appellant presents to this court three issues. The first is that the cross-examination was improper because said examination "did not fall into any recognized impeachment category"; second, that said examination "appeared to have constituted evidence of other crimes"; and third that "no proper foundation for its use was laid."

At trial, appellant presented a general objection, that the prosecution's question was "totally inadmissible." Appellant's additional objections were premised upon a lack of proper foundation. Appellant's general objection that the questioning was "totally inadmissible" lacks sufficient specificity to properly advise the trial court of any basis for the objection. A general objection preserves nothing for review. *State v. Cannady*, 660 S.W.2d 33, 36 (Mo. App.1983).

Both the majority and concurring opinions address and dispose of this appeal on points raised for the first time on this appeal. When an appeal is based upon a trial objection, an appellant is limited to the objection presented at trial and is prohibited from enlarging either the scope or nature of the objection on appeal. *State v. Applewhite*, 682 S.W.2d 185, 188 (Mo.App. 1984). Thus, the consideration given by the majority opinion and the concurring opinion on the issue that such evidence was evidence of other crimes was reviewable only under Rule 30.20 for plain error. While neither opinion addresses the other issue raised by appellant, i.e., said questioning did not fall into any recognized impeachment category, the review of that issue could only be made under Rule 30.20. The majority opinion has failed to apply the proper doctrine of review.

The majority opinion does briefly discuss the issue of laying a foundation, however, this writer is at a loss to determine whether the majority opinion disposes of the appeal on that basis. Nonetheless, it is assumed in this dissent that the majority opinion rules this appeal on the basis that no proper foundation was laid.

The record clearly dispels that conclusion. The record reveals that the prosecutor commenced cross-examination of appellant by asking, "Do you remember on June 21, 1982, making the statement …?," to which appellant interjected his general objection that such testimony was "totally inadmissible." Hence, at this point, only a general objection was before the court which preserves nothing for review. This general objection was properly overruled by the trial court. The prosecution then commenced a series of questions related to a statement made by appellant on June 21 about a May, 1981 incident. Appellant stated that he did not recall "offhand" making the statement. After a discussion between the prosecutor and appellant about the year (either 1981 or 1982), appellant was asked if the statement was familiar, and he said "no." At this point, appellant objected that no proper foundation had been laid. The trial court overruled appellant's objection and frankly, this writer will agree that was error, but it was harmless error.

However, the prosecutor continued his questioning with reference to months of the years 1981–1982 and reference to appel-

lant's "old car." When additional details of the prior statement were mentioned in the cross examination, appellant was asked, "Do you remember that?" Appellant responded, "Yes. Yes. That was in Toronto. I was talking to a prosecutor." Subsequent inquiry followed about details of the statement, all of which appellant either denied making or had no recollection of making the statements. A subsequent objection was made on the failure to lay a proper foundation.

It is submitted herein that if a foundation was required, then a proper foundation was laid. It is clear that appellant understood the statements referred to were attributed to him. Furthermore, it is clear that appellant knew and understood to whom the statements were made because appellant testified voluntarily that the statements were given during a conversation with a prosecutor in Toronto. This was sufficient compliance under *State v. Graves*, 588 S.W.2d 495, 498–499 (Mo. banc 1979), even though the prosecution failed to establish the time and place of the statement.

It is further suggested by this writer, however, that no such foundation was requisite. In the first place, appellant, as the record reveals, was not impeached by any extrinsic proof of the prior statements. In addition, the statements were never marked as exhibits and offered into evidence.

It should be noted that when appellant responded to the prosecutor's questions, no further inquiry was made. Hence, there was no evidence of "other crimes." Had there been further and detailed inquiry, the point may well have been reached that the jury would have been given evidence of other crimes. Had that occurred, then the position of my learned colleagues on that issue might properly be before this court.

The jury in this case was advised as early as the voir dire that appellant had been previously convicted of rape. Again, in his direct testimony, appellant admitted the conviction. Thus, the cross-examina-

tion now challenged really added nothing to the knowledge of the jury regarding his prior conviction.

There is not even any suggestion and certainly no proof of any bad faith by the prosecution. Appellant does not even claim any bad faith.

On a final note, I cannot agree that the inquiry of appellant was upon a collateral matter as stated in the majority opinion. The "matter" was obviously of material significance in the present case and was pertinent to the issues developed in the case. Appellant testified that the victim herein solicited the sexual act from appellant by her conversation and conduct. The inquiry now in dispute centered upon whether appellant, by earlier statements, had injected the same claim in other and prior proceedings. It cannot be concluded, as suggested by the majority, that the inquiry was upon a collateral matter or issue.

Moreover, the now-disputed evidence was admissible as evidence of a common scheme or plan, and even if such evidence might be construed as evidence of other crimes, it was admissible because it tended to establish a common scheme or plan. *State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982).

In conclusion, it is the opinion of this writer that both the majority opinion has applied the inapplicable standard of review to this appeal. The only permissible review upon the assertion of evidence of other crimes, and that the cross-examination did not fall into any recognizable category of impeachment, is for plain error. The majority opinion simply ignores this required review and hence must fail. In addition, upon the whole of the record, appellant has failed to establish there was any manifest injustice or any miscarriage of justice, either of which is requisite to constitute reversal.

As to the remaining issue of no proper foundation having been laid, the majority opinion ignores the rule set forth in *Graves* because the record reveals there was sub-

**478**

stantial compliance with the rule requiring a proper foundation.

The judgment herein should be affirmed.